# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

FILED

2003 DEC -4  P 2: 30

US DISTRICT COURT
HARTFORD CT

JEANNE M. SULLIVAN,  :  CIVIL ACTION NO.:
       PLAINTIFF  :  NO.: 302CV916(CFD)
  :
VS.  :
  :
  :
DAVID J. SULLIVAN  :  DECEMBER 3, 2003

## MOTION TO COMPEL DEFENDANT, DAVID SULLIVAN'S DEPOSITION AND MOTION FOR SANCTIONS

The Plaintiff, Jeanne M. Sullivan, hereby moves the Court to compel the Defendant,

David J. Sullivan, to attend his own deposition pursuant to Rule 37(d) of the Federal Rules of

Civil Procedure in Bermuda, his place of residence, within thirty (30) days after this motion is

ruled upon for the reason that the Defendant has refused to schedule and/or attend his deposition

which has been requested by the Plaintiff several times in the above captioned matter.

In support of her argument, the Plaintiff relies on the following:

## FACTS

1. On January 8, 2003, the Plaintiff noticed David J. Sullivan's deposition for Friday,
   January 24, 2003 at 10:00 A.M. (Notice of Deposition attached hereto and marked
   Exhibit "A");

2. On January 16, 2003, Attorney William Franklin, counsel for David J. Sullivan, contacted
   the undersigned and advised that Mr. Sullivan would not consent to being deposed in
   Connecticut on January 24, 2003.  (See Affidavit of Owen P. Eagan, attached hereto and
   marked Exhibit "B");

3.      That the undersigned suggested that if David J. Sullivan was reluctant to come to

Connecticut that the Conservator and the undersigned would travel to Bermuda and take

his deposition there, however, the undersigned suggested that since David J. Sullivan

often came to visit his brother, James J. Sullivan, and often came to Connecticut to

conduct other business, that it may be in the best interest of the estate and of David J.

Sullivan to submit to a deposition in Connecticut. (Exhibit "B");

4.      On January 17, 2003, Attorney Franklin confirmed the undersigned's conversation with

him on January 16, 2003.  (Copy of William Franklin's letter dated January 17, 2003,

attached hereto and marked Exhibit "C").

5.      In his letter, Attorney Franklin agreed that he would consult with his client and get back

to the undersigned (Exhibit "C");

6.      As agreed, the deposition was marked off (Exhibit "B");

7.      On February 14, 2003 Attorney Franklin called and told the undersigned that his client,

David J. Sullivan, would not submit  voluntarily to a deposition in Connecticut or in

Bermuda (Exhibit "B");

8.      On March 7, 2003, the action was stayed pursuant to an Order of this Court and the

parties were sent to United States Magistrate Thomas P. Smith so that settlement

discussions could ensue;

9.      Settlement discussions failed and the Court held a hearing on the Defendant's Motion to

Dismiss dated September 15, 2003;

10.     The Defendant's Motion to Dismiss was denied on September 23, 2003;

11.    On October 10, 2003, the undersigned, on behalf of the Plaintiff, again re-noticed the deposition of David Sullivan for Friday, October 31, 2003 at 10:00 A.M. (Re-Notice of Deposition attached hereto and marked Exhibit "D");

12.    Approximately one week before October 31, 2003, Attorney William Franklin called the undersigned and said that David Sullivan would not attend the deposition as scheduled (Exhibit "B");

13.    In early November, 2003, the undersigned called Attorney Franklin and asked whether the Plaintiff could schedule David J. Sullivan's deposition at David J. Sullivan's convenience (Exhibit "B");

14.    The undersigned represented to Attorney Franklin, that the Plaintiff would pay for David Sullivan's transportation to and from the deposition or in the alternative the undersigned told Attorney Franklin that Attorney Lefevre and he would travel to Bermuda to take David Sullivan's deposition (Exhibit "B");

15.    On November 19, 2003, Attorney Franklin called the undersigned and stated that David Sullivan would not come to Connecticut to give his deposition nor would he give his deposition in Bermuda unless the Court compelled him to do so (Exhibit "B");

16.    The Plaintiff needs the deposition of the Defendant in this case to properly prepare for trial;

**LAW**

Pursuant to Fed.R.Civ.P. 30, a party may take the testimony of another party by deposition upon oral examination without leave of the Court.

Fed.R.Civ.P. 28(b) governs the taking of depositions in foreign countries. It allows depositions to be taken:

1. Pursuant to any applicable treaty or convention; or

2. Pursuant to any letter of request; or

3. Upon notice before a person authorized to administer oaths in a place where the examination is held, either by the law thereof or the law of the United States or before a person commissioned by the Court and the person so commissioned shall have the power by virtue of the commission to administer any necessary oath and to take testimony.

The strictures of Fed.R.Civ.P. 28(b) serve to mitigate the dangers inherent in foreign depositions, both in terms of accuracy and identity of deponents and documents by requiring that the deponent testify pursuant to a letter of request, treaty or convention or notice before one authorized or commissioned to administer oaths. Advani Enterprises, Inc. v. Underwriters at Lloyds, and Syndicate, 735 at Lloyds of London, 200 U.S. Dist. Lexis 15421; 48 Fed.R. Serv. 3rd (Callahan) 897; 2001 AMC 660 (copy attached).

The deposition of the Defendant, David Sullivan, is essential to the Plaintiff's claim. The Plaintiff has alleged that the Defendant has defrauded his mother, out of almost One Million and 00/100 ($1,000,000.00) Dollars of her money. The Defendant, David Sullivan is also accused of secreting this money away to his home in Bermuda.

The Defendant himself has admitted in his responses to various requests to admit that he has made deposits of his mother's money to an account in the Bermuda Bank of N.T. Butterfield and Son Limited (hereinafter "Bank of Butterfield"), account number 20 006 840 705780 100 (hereinafter, "the mystery account"). (See copy of David Sullivan's Responses to Requests to Admit attached hereto and marked Exhibit "E"). The conservator has traced over Two Hundred

Fifty Thousand and 00/100 ($250,000.00) Dollars of the Plaintiff's money into the mystery account.

It is therefore, absolutely necessary that David Sullivan testify under oath as to what he has done with his mother's money. It is also necessary to find out what other money David Sullivan has taken from his mother.

Since David Sullivan, through Attorney Franklin, has refused to submit to a deposition in Bermuda without a Court Order, the Plaintiff, Jeanne M. Sullivan, was forced to file this motion seeking that the Court compel the deposition. If the motion to compel is granted, notice of deposition will be filed pursuant to Fed.R.Civ.P. 28(b). The notice will provide that David Sullivan be required to appear before a person authorized to administer oaths in Bermuda where the examination is to be held.

**WHEREFORE,** the Plaintiff, Jeanne M. Sullivan, respectfully moves that the Court Order the Defendant, David J. Sullivan to be deposed in Bermuda, thirty (30) days from the entry of this Order. The Plaintiff also moves that the Court sanction the Defendant in the amount of $1,000.00 for having to pay counsel to draft, file and argue this motion.

<div style="margin-left: 40%">

PLAINTIFF,
JEANNE M. SULLIVAN


BY_____
   Owen P. Eagan
   EAGAN & DONOHUE
   24 Arapahoe Road
   West Hartford, CT 06107
   Juris #: ct00716
   (860)232-7200

</div>

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JEANNE M. SULLIVAN, | : | CIVIL ACTION NO.: |
| PLAINTIFF | : | NO.: 302CV916(CFD) |
| | : | |
| VS. | : | |
| | : | |
| DAVID J. SULLIVAN, | : | |
| DEFENDANT | : | JANUARY 8, 2003 |

## NOTICE OF DEPOSITION

**PLEASE TAKE NOTICE THAT** the pursuant to Rule 30 of the Federal Rules of Civil Procedure, the Plaintiff in the above-captioned action, **JEANNE M. SULLIVAN**, will take the deposition of **DAVID J. SULLIVAN,** before Niziankiewicz and Miller Court Reporting, or any person authorized to take depositions in the State of Connecticut, on **FRIDAY, JANUARY 24, 2003** at **10:00 A.M.**, or such other day to which the proceedings may be continued until completed, at the law offices of Eagan & Donohue, 24 Arapahoe Road, West Hartford, Connecticut.

The deposition is being taken for the purposes of discovery, for use at trial, or for such other purposes as are permitted under the Rules of Court, including the applicable Federal Rules of Civil Procedure. The Defendant, David J. Sullivan, is requested to bring to this deposition any and all written material or tangible items of any kind referred to, prepared by and/or in the possession of the deponent, which relate to the above referenced matter, including but not limited to the following:

**EXHIBIT "A"**

1.  On May 30, 2002, he testified under oath to the Probate Court he removed boxes of records from his mother, Jeanne M. Sullivan's house in Sharon, Connecticut.  Please provide copies of all those documents;

2.  Copies of his U.S. and other tax returns for the years 1990 to the present;

3.  Copies of any financial statements prepared by him or for him for the past ten (10) years;

4.  Copies of all the bank and financial records, he held and/or maintained for his mother, Jeanne M. Sullivan, and for his father, James Sullivan;

5.  Copies of any and all stocks, bonds, deeds, etc. he is holding, concerning property which are or have been owned by his mother, Jeanne M. Sullivan, and/or by his father, James Sullivan, or which David J. Sullivan claims were distributed, conveyed and/or transferred by Jeanne M. Sullivan and/or James Sullivan to him over the past fourteen (14) years;

6.  Copies of any and all correspondence, memoranda and other writings between David J. Sullivan and Attorney Lincoln Cornell over the past fourteen (14) years;

7.  Copies of any and all correspondence, memoranda and other writings between David J. Sullivan and Catherine Beers over the past fourteen (14) years;

8.  Copies of any and all correspondence, memoranda and other writings between David J. Sullivan and his mother and/or his father over the past fourteen (14) years;

9.  Copies of any and all correspondence, memoranda and other writings he had with his brother, James J. Sullivan, or any other sibling concerning his mother, his father and /or his mother's and/or father's assets, and/or financial affairs over the past fourteen (14) years;

10. Copies of any and all correspondence, memoranda or other writings he has had with any banks or financial institutions including but not limited to those in the United States, Bermuda and elsewhere concerning his mother and/or his father, and/or his mother's or father's assets and/or financial affairs;

11. Copies of any and all records, statements, instruments, memos, notes, certificates, passbooks, writings, printouts, etc., he has with regard to any of his mother's and/or father's assets, and/or financial affairs of any type or nature whatsoever;

12. Copies of all statements, printouts, correspondence, checks and other documents, instruments, memoranda and/or writings concerning any accounts of Jeanne Sullivan, James Sullivan and/or David Sullivan with Brown Brothers Harriman and/or any and all agents, employees, officers and/or representatives thereof;

13. Copies of all statements, printouts, correspondence, checks and other documents, instruments, memoranda and/or writings concerning any accounts of Jeanne Sullivan, James Sullivan and/or David Sullivan with Bank of Butterfield and/or any and all agents, employees, officers and/or representatives thereof, including but not limited to Account #'s 006 840 217752 100 & 006 840 705 700 100;

14. Copies of all statements, printouts, correspondence, checks and other documents, instruments, memoranda and/or writings concerning any accounts of Jeanne Sullivan, James Sullivan and/or David Sullivan with National Iron Bank and/or any and all agents, employees, officers and/or representatives thereof;

15. Copies of all correspondence, documents, instruments, memoranda and/or other writings between David J. Sullivan and Jacob (a/k/a Jack) Wasserman, Corner Realty, 30/7, Inc.,

Riveranda Associates, 352 Seventh Avenue Associates, W.G.A.S. Associates, Turnpike

Associates, 35C Corp., and/or any other investment enterprises in which Jeanne Sullivan

and/or James Sullivan had any ownership interest and/or involvement between 1988 and

the present.

16. Copies of all stock certificates, share certificates and/or any other instruments, documents,

correspondence, memoranda and/or other writings relating to investments of Jeanne

Sullivan and/or James Sullivan in Varian, Tootsie Roll, Envirosource, Cadbury Schweppes,

Herley, Veeco, N.E.O.A. 4, Novatronics, Pickering Controls and/or any other Companies

in which Jeanne Sullivan and/or James Sullivan had any ownership interest and/or

involvement between 1988 and the present.

PLAINTIFF,
JEANNE M. SULLIVAN

By_____
    Owen P. Eagan, Esq.
    EAGAN & DONOHUE
    24 Arapahoe Road
    West Hartford, CT  06107
    Juris No. 106162
    (860)232-7200

## **CERTIFICATION**

This is to certify that the foregoing was certified mailed, postage prepaid, on this *8 7 #* day of

January, 2003 to the following:

William C. Franklin, Esq.
Cramer & Anderson, LLP
P.O. Box 278
46 West Street
Litchfield, CT   06759

_____
Owen P. Eagan

X01-D01.DavidJ.Sulivan/st

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JEANNE M. SULLIVAN,                      :     CIVIL ACTION NO.:
              PLAINTIFF           :          NO.: 302CV916(CFD)

                                 :

VS.                                      :
                                   :

DAVID J. SULLIVAN,                       :
              DEFENDANT          :     DECEMBER 3, 2003

### AFFIDAVIT OF OWEN P. EAGAN

I, **OWEN P. EAGAN**, the undersigned, being duly sworn, hereby depose and say:

1.    That I am over the age of eighteen and understand the obligations of an oath;

2.    That I am counsel for the Plaintiff, Jeanne M. Sullivan, in the above captioned matter filed in the Federal Court;

3.    That Jeanne M. Sullivan's Conservator of her Estate is Attorney Matthew J. Lefevre;

4.    That on January 16, 2003, Attorney William Franklin, counsel for David J. Sullivan, contacted me and advised me that David J. Sullivan would not consent to being deposed on January 24, 2003;

5.    That on January 16, 2003, I also told Attorney Franklin that the Conservator, Attorney Matthew J. Lefevre had agreed to let me travel to Bermuda with him to take David J. Sullivan's deposition there.  I explained, however, that I thought it was in the best interest of both his mother and him that the deposition be taken in Connecticut because David J. Sullivan often traveled to Connecticut to visit his brother James Sullivan and/or to conduct business;

**EXHIBIT "B"**

# CRAMER & ANDERSON LLP

LAW OFFICES

46 WEST STREET
P.O. BOX 278
LITCHFIELD, CT 06759-0278

———

(860) 567-8717
FAX (860) 567-4531

68 NORTH STREET
DANBURY, CT 06810

KENT GREEN
KENT, CT 06757

51 MAIN STREET
NEW MILFORD, CT 06776

2 GREEN HILL ROAD
WASHINGTON DEPOT, CT 06794

William C. Franklin

January 17, 2003

SENT VIA MAIL & FACSIMILE: 860-232-0214

Owen P. Eagan, Esq.
Egan & Donohue
24 Arapahoe Road
West Hartford, CT 06107

<u>**Re: Jeanne M. Sullivan v. David Sullivan, et al**</u>

Dear Attorney Eagan:

In accordance with our telephone conversation on January 16, 2003 please be advised that Mr. Sullivan will not consent to being deposed in Connecticut January 24 per the Notice of Deposition previously forwarded to me.

You have requested that I confer with Mr. Sullivan to see if he will reconsider his position in light of the anticipated cost of pursuing his deposition in Bermuda, which you have assured me you will do in the event Mr. Sullivan will not voluntarily appear to be deposed. I will take this issue up with Mr. Sullivan.

You have also requested that I check with Mr. Sullivan to ascertain available dates in February for his deposition in Bermuda. I will confer with Mr. Sullivan relative to that issue as well.

Finally, this letter will confirm that you have agreed that upon submission of this letter, you will mark off the deposition previously scheduled for Mr. Sullivan in Connecticut on January 24. Thank you for your courtesies in that regard.

Very truly yours,

William C. Franklin
WCF/dob

**EXHIBIT "C"**

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JEANNE M. SULLIVAN, | : | CIVIL ACTION NO.: |
| PLAINTIFF | : | NO.: 302CV916(CFD) |
| | : | |
| VS. | : | |
| | : | |
| DAVID J. SULLIVAN, | : | |
| DEFENDANT | : | OCTOBER 10, 2003 |

### RE-NOTICE OF DEPOSITION

**PLEASE TAKE NOTICE THAT** the pursuant to Rule 30 of the Federal Rules of Civil Procedure, the Plaintiff in the above-captioned action, **JEANNE M. SULLIVAN,** will take the deposition of **DAVID J. SULLIVAN,** before Niziankiewicz and Miller Court Reporting, or any person authorized to take depositions in the State of Connecticut, on **FRIDAY, OCTOBER 31 , 2003** at **10:00 A.M.,** or such other day to which the proceedings may be continued until completed, at the law offices of Eagan & Donohue, 24 Arapahoe Road, West Hartford, Connecticut.

The deposition is being taken for the purposes of discovery, for use at trial, or for such other purposes as are permitted under the Rules of Court, including the applicable Federal Rules of Civil Procedure. The Defendant, David J. Sullivan, is requested to bring to this deposition any and all written material or tangible items of any kind referred to, prepared by and/or in the possession of the deponent, which relate the above referenced matter, including but not limited to the following:

**EXHIBIT "D"**

1.  On May 30, 2002, he testified under oath to the Probate Court he removed boxes of records from his mother, Jeanne M. Sullivan's house in Sharon, Connecticut.  Please provide copies of all those documents;

2.  Copies of his U.S. or other tax returns for the past five years;

3.  Copies of any financial statements prepared by him or for him for the past ten (10) years;

4.  Copies of all the financial records, he maintained for his mother, Jeanne M. Sullivan, and for his father, James Sullivan;

5.  Copies of any and all stocks, bonds, deeds, etc. he is holding,  which are owned by his mother, Jeanne M. Sullivan, or by his father, James Sullivan, or which David J. Sullivan claims were distributed by Jeanne M. Sullivan or James Sullivan to him over the past ten (10) years;

6.  Copies of any and all correspondence between David J. Sullivan and Attorney Lincoln Cornell over the past ten years;

7.  Copies of any and all correspondence between David J. Sullivan and Catherine Beers over the past ten years;

8.  Copies of any and all correspondence with David J. Sullivan and his mother or his father over the past ten (10) years;

9.  Copies of any and all correspondence he had with his brother, James J. Sullivan, or any other sibling concerning his mother and /or his mother's assets over the past ten (10) years;

10. Copies of any and all correspondence he has had with any banks or financial institutions including but not limited to Bermuda or elsewhere concerning his mother and/or his father, and/or his mother's or father's  assets;

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

-------------------------------------------------------

JEANNE M. SULLIVAN,

                **Plaintiff,**

    **against**

DAVID J. SULLIVAN,

                **Defendant**

**Case No. 302 CV 916 (CFD)**

**November 5, 2003**

-------------------------------------------------------

## DEFENDANT'S RESPONSES TO
## PLAINTIFF'S REQUESTS TO ADMIT DATED JANUARY 29, 2003

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, the Defendant in the above captioned matter hereby responds to the Plaintiff's Requests to Admit dated January 29, 2003 as follows:

1.    *That the Defendant, David J. Sullivan, was the owner of a bank account known as #20 006 840 705780 100 at the Bank of Butterfield located in Bermuda.*

**RESPONSE:**

    **Denied.**

2.    *That the Defendant, David J. Sullivan, deposited his mother, Jeanne M. Sullivan's funds into account #20.006 840 705780 100 at the Bank of Butterfield located in Bermuda.*

**EXHIBIT "E"**

**RESPONSE:**

**Admitted on occasion.**

3.    *The Defendant, David J. Sullivan, has signed his mother, Jeanne M. Sullivan's name on documents.*

**RESPONSE:**

**Admitted on occasion.**

4.    *The Defendant, David J. Sullivan, has signed his mother, Jeanne M. Sullivan's name on checks.*

**RESPONSE:**

**Admitted on occasion.**

5.    *The Defendant, David J. Sullivan, has signed his mother, Jeanne M. Sullivan's name on checks which he made out to himself.*

**RESPONSE:**

**Admitted on occasion.**

6.    *The Defendant, David J. Sullivan, has signed his mother's name on some of his mother's checks with her permission.*

**RESPONSE:**

**Admitted.**

7.     The Defendant, David J. Sullivan, has signed his mother's name on some of his mother's checks without her permission.

**RESPONSE:**

**Denied.**

8.     The Defendant, David J. Sullivan, has signed his mother, Jeanne M. Sullivan's name on checks to pay some of his bills.

**RESPONSE:**

**Admitted on occasion.**

9.     The Defendant, David J. Sullivan, has signed his father, James J. Sullivan's name on documents.

**RESPONSE:**

**Given the date of death of James J. Sullivan, and the time period prior thereto, when the Defendant assisted James J. Sullivan with his financial transactions, the Defendant has insufficient memory at this point in time to either admit or deny this request. However, the Defendant can affirmatively state he does not at this point in time have a specific recollection that is consistent with this request.**

10.     The Defendant, David J. Sullivan, has signed his father, James J. Sullivan's name on checks.

**RESPONSE:**

**See Response to #9.**

3

11.    *The Defendant, David J. Sullivan, has signed his father, James J. Sullivan's name on checks made out to himself.*

**RESPONSE:**

**See Response to #9.**

12.    *The Defendant, David J. Sullivan, has signed his brother, James J. Sullivan's name on documents.*

**RESPONSE:**

**The Defendant does not have a specific recollection of having signed his brother's name on any documents; but, given their lifelong association with one another, cannot accurately admit or deny this request.**

13.    *The Defendant, David J. Sullivan, has signed his brother, James J. Sullivan's name on checks.*

**RESPONSE:**

**Denied.**

14.    *The Defendant, David J. Sullivan, has signed his brother, James J. Sullivan's name on checks to himself.*

**RESPONSE:**

**Denied.**

15.   The Defendant, David J. Sullivan, has taken possession of at least $100,000.00 of his mother, Jeanne M. Sullivan's assets.

**RESPONSE:**

**Denied.**

16.   The Defendant, David J. Sullivan, has taken possession of at least $200,000.00 of his mother, Jeanne M. Sullivan's assets.

**RESPONSE:**

**Denied.**

17.   The Defendant, David J. Sullivan, has taken possession of at least $300,000.00 of his mother, Jeanne M. Sullivan's assets.

**RESPONSE:**

**Denied.**

18.   The Defendant, David J. Sullivan, has taken possession of at least $400,000.00 of his mother, Jeanne M. Sullivan's assets.

**RESPONSE:**

**Denied.**

19.   The Defendant, David J. Sullivan, has taken possession of at least $500,000.00 of his mother, Jeanne M. Sullivan's assets.

**RESPONSE:**

**Denied.**

20.    The Defendant, David J. Sullivan, has taken possession of at least $600,000.00 of his mother, Jeanne M. Sullivan's assets.

**RESPONSE:**

Denied.

21.    The Defendant, David J. Sullivan, has taken possession of at least $700,000.00 of his mother, Jeanne M. Sullivan's assets.

**RESPONSE:**

Denied.

22.    The Defendant, David J. Sullivan, has taken possession of at least $800,000.00 of his mother, Jeanne M. Sullivan's assets.

**RESPONSE:**

Denied.

23.    The Defendant, David J. Sullivan, has taken possession of at least $900,000.00 of his mother, Jeanne M. Sullivan's assets.

**RESPONSE:**

Denied.

24.    The Defendant, David J. Sullivan, has taken possession of at least $1,000,000.00 of his mother, Jeanne M. Sullivan's assets.

**RESPONSE:**

Denied.

25.     The Plaintiff, Jeanne M. Sullivan, asked the Defendant, David J. Sullivan, or his representative, that David J. Sullivan return the funds which he has taken from his mother.

**RESPONSE:**

   **Denied.**

26.     The Defendant, David J. Sullivan, has not returned any funds to the Plaintiff.

**RESPONSE:**

   **Denied.**

27.     The Defendant, David J. Sullivan, has not returned any funds to the Plaintiff's representative.

**RESPONSE:**

   **Denied.**

28.     The Defendant, David J. Sullivan, stated on July 11, 2002 that he did not receive any gifts from his mother.

**RESPONSE:**

   **Denied.**

29.     The Defendant, David J. Sullivan, claimed he bought his mother's Varian stock for cash.

Service: Get by LEXSEE®
Citation: 2000 us dist. lexis 15421

*2000 U.S. Dist. LEXIS 15421, \*; 48 Fed. R. Serv. 3d (Callaghan) 897; 2001 AMC 660*

ADVANI ENTERPRISES, INC., Plaintiff, -against UNDERWRITERS AT LLOYDS, AND SYNDICATE 735 AT LLOYDS OF LONDON, Defendants.

95 Civ. 4864 (CSH)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2000 U.S. Dist. LEXIS 15421; 48 Fed. R. Serv. 3d (Callaghan) 897; 2001 AMC 660

October 18, 2000, Decided
October 19, 2000, Filed

**DISPOSITION:** [\*1] Defendants cross motion for a protective order denied.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff moved for an order permitting telephonic depositions of two non-party witnesses residing in Egypt, in plaintiff's admiralty action on a marine cargo insurance policy against defendant underwriters. Defendants cross-moved for a protective order preventing the telephonic depositions and opposing the admission of a survey report that plaintiff sought to introduce.

**OVERVIEW:** Plaintiff purchased a marine cargo insurance policy from defendant underwriters to cover a shipment of goods on a voyage. Plaintiff brought an admiralty action against defendants on the policy. Plaintiff sought to take telephonic depositions of two witnesses in Egypt, and to introduce a survey report prepared by one of those witnesses. Defendants objected. The court held that plaintiff could take the telephonic depositions on the express condition that before the depositions could take place, plaintiff was required to submit to the court a proposal of compliance with Fed. R. Civ. P. 28(b), governing foreign depositions. Under Fed. R. Civ. P. 30(b)(7), the court had authority to grant the motion for telephonic depositions. Defendants failed to present persuasive grounds to reject the request. The court concluded that plaintiff would be able to admit the survey report into evidence through the testimony of one of the deposition witnesses, making a ruling on its alternative admissibility unnecessary at this time.

**OUTCOME:** Plaintiff's motion for an order permitting telephonic depositions was granted, conditioned on compliance with the rule regarding foreign depositions. Defendants' cross motion for a protective order was denied. The court declined to rule on the question of the survey report's admissibility, pending the outcome of the depositions.

**CORE TERMS:** deposition, telephonic, container, deponent, cargo, oath, commissioned, administer, accuracy, protective order, underwriters, foreign countries, court ultimately, summary judgment, objecting party, face-to-face, convention, prejudiced, encounter, warranty, treaty, notice, insurance policy, admissibility, non-party, vessel, marine

### LexisNexis (TM) HEADNOTES - Core Concepts - ◆ Hide Concepts

Civil Procedure > Discovery Methods > Oral Depositions 🔍
*HN1* Fed. R. Civ. P. 30(b)(7) provides that the court upon motion may order that a

deposition be taken by telephone. More Like This Headnote

Civil Procedure > Discovery Methods > Oral Depositions
HN2 Telephonic depositions are broadly permitted. Such permission should be granted unless an objecting party will likely be prejudiced or the method employed would not reasonably ensure accuracy and trustworthiness. Leave to take telephonic depositions should be liberally granted in appropriate cases. More Like This Headnote

Civil Procedure > Discovery Methods > Oral Depositions
HN3 Authorization to take telephonic depositions does not depend upon a showing of hardship by the applicant. The mere assertion by the requesting party that telephonic depositions are preferred on the grounds of efficiency and economy constitutes a legitimate reason to permit them. The burden then rests upon the objecting party to show why the depositions should proceed in the traditional manner. More Like This Headnote

Civil Procedure > Disclosure & Discovery > Foreign Discovery
HN4 The strictures of Fed. R. Civ. P. 28(b) serve to mitigate the dangers inherent in foreign depositions, both in terms of accuracy and identity of deponents and documents, by requiring that the deponent testify pursuant to a letter of request, treaty or convention, or on notice before one authorized or commissioned to administer oaths. More Like This Headnote

Civil Procedure > Disclosure & Discovery > Foreign Discovery
HN5 Fed. R. Civ. P. 28(b) governs the taking of depositions in foreign countries, allowing depositions to be taken: (1) pursuant to any applicable treaty or convention, or (2) pursuant to a letter of request, or (3) on notice before a person authorized to administer oaths in the place where the examination is held, either by the law thereof or the law of the United States, or (4) before a person commissioned by the court, and the person so commissioned shall have the power by virtue of the commission to administer any necessary oath and take testimony. More Like This Headnote

Civil Procedure > Discovery Methods > Oral Depositions
HN6 With respect to telephonic depositions, a deposition is "taken" in the place where the witness answers the questions rather than the place where the questions are propounded. More Like This Headnote


**COUNSEL:** For ADVANI ENTERPRISES, INC., plaintiff: Steven L. Barkan, New York, NY.

For UNDERWRITERS AT LLOYDS, defendant: James W. Carbin, Newark, NJ.

For SYNDICATE 735 AT LLOYDS OF LONDON, defendant: James W. Carbin, James W. Carbin, Esq., Newark, NJ.

**JUDGES:** CHARLES S. HAIGHT, JR., SENIOR UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** CHARLES S. HAIGHT, JR.

**OPINION:** MEMORANDUM OPINION AND ORDER

HAIGHT, Senior District Judge:

This admiralty action, commenced by plaintiff assured against defendant underwriters on a marine cargo insurance policy, is before the Court on a motion by the plaintiff for an order permitting telephonic depositions of two non-party witnesses residing in Egypt. The plaintiff, alternatively, seeks the admission of a survey report prepared by one of these witnesses into evidence as an admission by a party opponent. The defendants cross-move for a protective order preventing the telephonic depositions and opposing the admission of the survey report. For reasons stated below, the Court grants the plaintiff's request for telephonic depositions on the express condition that before the depositions may take place the plaintiff **[*2]** submit to the Court a proposal of compliance with Rule 28(b) of the Federal Rules of Civil Procedure. For this reason it is unnecessary for the Court to rule on the question of the survey report's admissibility under the Federal Rules of Evidence 801(d)(2). Defendants' cross-motion for a protective order is denied.

This case comes again before the Court by way of a circuitous path which is detailed in my April 20, 2000 decision denying defendants' summary judgment motion, familiarity with which is assumed. Advani Enters. v. Underwriters at Lloyds, 2000 U.S. Dist. LEXIS 5153, 95 Civ. 4864, 2000 WL 460415 (S.D.N.Y.April 20, 2000). For present purposes it is sufficient to say that plaintiff Advani Enterprises, Inc. ("Advani") purchased a marine cargo insurance policy, evidenced by a cover note, from defendants Underwriters at Lloyds and Syndicate 735 at Lloyds of London ("the Underwriters") to cover a shipment of "Porcelain Dishware in cartons in three full containers door to door" on a voyage "Far East to Port Said, Egypt via Bonded Warehouse New York." The policy also stated: "Warranted full container loads Door to Door."

The three full containers into which the porcelain dishware was "stuffed" were loaded on board the M.V. CHO YANG GIANT **[*3]** in Hong Kong. The vessel departed Hong Kong for New York, arriving on October 22, 1994, and the next day she sailed, with said goods, from New York to Antwerp. Upon arrival at Antwerp on November 7, 1994, the containers were transloaded into the feeder vessel M.V. DSR PORT SAID, which arrived at Port Said on November 19, 1994, and were discharged at the terminal on November 22, 1994.

The containers were then opened by Egyptian customs officers, including, allegedly, official Customs Clearing Agent Abdel Rahman el-Sayed Abdel Naeim. The containers of the plaintiff's cargo were subsequently delivered to the consignee. At that point a survey of the cargo was taken, and documented, by Samir Shata of the Royal Centre Surveyors and Consultants, describing damage to the cargo.

This Court granted defendants' original motion for summary judgment in an opinion reported at 962 F. Supp. 415 (S.D.N.Y.1997), where I held that (1) plaintiff had breached the warranty; (2) New York law governed the rights and obligations of the parties; and (3) under that law plaintiff's breach of warranty precluded any recovery on the policy.

The Court of Appeals reversed. 140 F.3d 157 (2d Cir.1998). **[*4]** It held that English law, rather than that of New York, governed, and accepted plaintiff's contention (which defendants do not dispute) that "under English law a breach [of warranty] only precludes recovery of those losses causally related to the breach." 140 F.3d at 160. The Court of Appeals vacated the summary judgment in defendants' favor and remanded the case to this Court "for further proceedings to determine whether under English law [plaintiff] is entitled to recover on its claim." Id. at 163.

The case now proceeds through the crucible of discovery. The plaintiff here requests an order, pursuant to the Fed.R.Civ.P. 30(b)(7), permitting telephonic depositions of Abdel Naeim and Shata. The request also implicates Rule 28(b), which allows for depositions in foreign countries subject to certain conditions. In relevant part, [HN1]Rule 30(b)(7) provides that "the court upon motion may order that a deposition be taken by telephone." Contrary to defendants argument that "telephonic depositions are permitted only in rare situations," n1

HN2 telephonic depositions are broadly permitted both in this jurisdiction and others. See Fireman's Fund Insurance Co. v. Zoufaly, 1994 U.S. Dist. LEXIS 15055, *1, 93 Civ. 1890, 1994 WL 583173 [*5] (S.D.N.Y.Oct. 21, 1994) ("such permission should be granted unless an objecting party will likely be prejudiced or the method employed 'would not reasonably ensure accuracy and trustworthiness'") (citing Colonial Times, Inc. v. Gasch, 166 U.S. App. D.C. 184, 509 F.2d 517 (D.C.Cir.1975)); Jahr v. IU Int'l Corp., 109 F.R.D. 429, 430-31 (M.D.N.C.1986) ("the Court concludes that leave to take telephonic depositions should be liberally granted in appropriate cases").

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 See Defendant's Memorandum of Law in Opposition, pg. 5. The defendant's citation to In Re Orthopedic Bonescrew, 1997 U.S. Dist. LEXIS 17224, No. MDL 1014, 1997 WL 704700 (E.D.Pa.Oct. 16, 1997) for this proposition is unavailing. Although the court ultimately required a traditional deposition, based upon the unique circumstances of the deponent, even that court ultimately stated as follows: "It has always been the position of the court that the parties should explore every opportunity to use telephonic depositions when it would not compromise the participant's position in the case if for no other reason than the tremendous savings in cost." Id. at *1.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*6]  HN3

Authorization to take telephonic depositions does not depend upon a showing of hardship by the applicant. See Jahr 109 F.R.D. at 430-31. The mere assertion by the requesting party that telephonic depositions are preferred on the grounds of efficiency and economy constitutes a legitimate reason to permit them. See Fireman's Fund, 1994 WL 583173, at *1. The burden then rests upon the objecting party, here the defendants, to show why the depositions should proceed in the traditional manner. See Cressier v. Neuenschwander, 170 F.R.D. 20, 21 (D. Kan.1996) (citing Jahr at 431).

The courts have recognized legitimate bases upon which to reject a request for telephonic depositions, but the defendants here fail to persuade on any such grounds. Defendants argue that counsel is denied the ability to observe and interact with a deponent during telephonic depositions, and therefore that they are not a commendable alternative to traditional depositions. The logic of this argument, of course, "would be tantamount to repealing Rule 30 (b)(7)" since all telephonic depositions inherently lack some advantages of face-to-face encounters. Cressler, 170 F.R.D. at 21. [*7]  n2 Further, objections on the grounds of accuracy and difficulties in translation are not particular to this case, but are instead the nearly inevitable product of the convergence of Rule 28(b), allowing foreign depositions, and Rule 30(b)(7), allowing telephonic depositions in lieu of traditional ones.  HN4 The strictures of Rule 28(b) serve to mitigate the dangers inherent in foreign depositions, both in terms of accuracy and identity of deponents and documents, by requiring that the deponent testify pursuant to a letter of request, treaty or convention, or on notice before one authorized or commissioned to administer oaths. Finally, the documents at issue here, a one page declaration and a short survey report, are far from the "voluminous" documents recognized in Fireman's Fund as providing reasonable grounds to reject a telephonic means of deposing a witness. 1994 WL 583173 at *1.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Defendant's reliance on Spielberg v. American Airlines, 1997 U.S. Dist. LEXIS 11702, 96 Civ. 4763, 1997 WL 458647 (S.D.N.Y.Aug. 11, 1997) for a contrary position is misplaced, as

that three paragraph decision (without citation to precedent) turned on the timing of the deposition and the moving party's regular travel to the State in which the telephonic deposition was to occur. It cannot be relied upon to undermine the currency of 30(b)(7).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*8]**

The Court is unconvinced that the defendants will be prejudiced by allowing the plaintiff to telephonically depose these two crucial non-party witnesses. As the court in Fireman's Fund noted, "if the party seeking the deposition is prepared to conduct its portion without face-to-face encounter with the witness, there is no reason not to permit it to do so, with any other party free to question the witness in person, thus avoiding any prejudice while reducing expenses." Id. at \*1.

Though the Court concludes that plaintiff's request complies with Rule 30(b)(7), and therefore grants the motion for telephonic deposition, such deposition must also comply with Rule 28(b). The defendant argues, correctly, that the proposed telephonic depositions will be procedurally defective if they fail to conform to Rule 28(b). *HN5* Rule 28(b) governs the taking of depositions in foreign countries, allowing depositions to be taken:

> (1) pursuant to any applicable treaty or convention, or (2) pursuant to a letter of request (whether or not captioned a letter rogatory), or (3) on notice before a person authorized to administer oaths in the place where the examination is held, either by the law **[\*9]** thereof or the law of the United States, or (4) before a person commissioned by the court, and the person so commissioned shall have the power by virtue of the commission to administer any necessary oath and take testimony.

The final sentence of Rule 30(b)(7) was added in 1980 to clarify that *HN6* a deposition is "taken" in the place where the witness answers the questions rather than the place where the questions are propounded, thereby bringing Rule 30(b)(7) into harmony with Rule 28(b). See Loucas G. Matsas Salvage & Towing v. M/T Cold Spring, 1997 U.S. Dist. LEXIS 2415, Civ.A. 96-0621, 1997 WL 102491 (E.D.La.March 5,1997)(citing Official Comment to 1980 Amendments). The plaintiff here must, therefore, provide to this Court a proposal for compliance with Rule 28(b), which will include necessarily a means by which to place the deponents under oath by a person located in Egypt. Fulfillment of this requirement is a necessary and sufficient condition for the valid telephonic deposition of these two witnesses. n3

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 The court in U.S. v. Ruiz-Castro, 92 F.3d 1519, 1532-1533 (10th.Cir.1996), a criminal case, upheld the district court's rejection of a motion for telephonic deposition, relying in part on the fact that the moving party failed to meet Rule 28(b) procedures regarding depositions in foreign nations. This Court does not believe, however, that such a plan for procedural compliance must, by law, be made prior to the determination of the appropriateness of a Rule 30(b)(7) deposition. With respect to the question of whether to permit telephonic depositions, this Court will address the requirements of Rule 28(b) *ex post* rather than *ex ante*.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*10]**