# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEANNE M. SULLIVAN, | : CIVIL ACTION |
| PLAINTIFF | :   NO.: 302CV916(CFD) |
| | : |
| VS. | : |
| | : |
| DAVID J. SULLIVAN, | : |
| DEFENDANT | : MARCH 5, 2004 |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PREJUDGMENT REMEDY

### I.  FACTS

The Plaintiff, Jeanne M. Sullivan, was and is a resident of Sharon, Connecticut. She is

currently subject to a Conservatorship of her person. She is acting herein by her Conservator,

Matthew Lefevre, Conservator of her Estate. The Conservator has been authorized to continue

the litigation of this matter by Order of the Torrington Probate Court on November 14, 2002.

(Testimony of Matthew Lefevre; and ¶2 of Defendant's Answer to Plaintiff's Complaint).

On November 14, 1990, the Plaintiff, Jeanne M. Sullivan's husband, James J. Sullivan,

died. (T. of Lefevre; and ¶9 Answer).

James J. Sullivan handled all financial matters for he and his wife prior to his death. (T.

Lefevre). After her husband died, the Plaintiff, Jeanne M. Sullivan entrusted her son, David J.

Sullivan, to handle her financial affairs (T. Lefevre; and ¶11 of Answer).

-1-

On September 17, 1991, Jeanne M. Sullivan executed a Durable Power of Attorney in favor of David J. Sullivan and made him Attorney in Fact granting him the formal ability to act on her behalf in all her transactions and affairs. (T. Lefevre; Exhibit "25"; and ¶12 of Answer).

Matthew Lefevre testified that a review of all Jeanne M. Sullivan's records indicated that David J. Sullivan dealt with Attorney Linc Cornell and the certified public account, Kathryn Beers on behalf of his mother, handling both her legal and tax affairs since the death of his father on November 14, 1990 until the time his Power of Attorney was revoked on August 30, 2001. (T. Lefevre).

David J. Sullivan resides in Bermuda. (T. Lefevre; and ¶4 Answer; and Exhibit "1").

After being appointed as Conservator on June 13, 2002, Matthew Lefevre undertook and exhaustive review of all documents relevant to Jeanne M. Sullivan's financial affairs. (T. Lefevre). Matthew Lefevre also interviewed Suzanne Xanthos who had held her mother, Jeanne M. Sullivan's Power of Attorney from August 30, 2001 until June 13, 2002 when he was appointed. (T. Lefevre; and Exhibit "24"). Matthew Lefevre also interviewed the undersigned, Owen P. Eagan, regarding his representation of Suzanne Xanthos while acting as her mother's Attorney in Fact. (T. Lefevre). Matthew Lefevre interviewed James Sullivan, the son of Jeanne M. Sullivan. (T. Lefevre).

On July 11, 2002, Matthew Lefevre also met with the Defendant, David J. Sullivan, along with his counsel, Attorney William Franklin. (T. Lefevre; and Exhibit "1").

While at that meeting, David J. Sullivan admitted to Matthew Lefevre that he handled his mother's financial affairs for the past ten (10) years. He also stated that his mother never made a gift to him. He also stated that he purchased $30,000.00 to $60,000.00 worth of Varian Stock from his mother for cash. (T. Lefevre). At the end of the July 11, 2002 meeting, David J. Sullivan pledged to cooperate with Matthew Lefevre because he had nothing to hide. (T. Lefevre).

Matthew Lefevre testified that he reviewed all of Jeanne M. Sullivan's tax returns filed since 1989. Consistent with what David J. Sullivan told him on July 11. 2002, none of Jeanne M. Sullivan's tax returns reflected that she had made any gifts to David J. Sullivan. (T. Lefevre). However, inconsistent with what David J. Sullivan told him on July 11, 2002. None of the tax returns reflected that she sold Varian Stock to David Sullivan and paid a capital gain or took a capital loss. (T. Lefevre).

While at the July 11, 2002 meeting, David Sullivan presented Matthew Lefevre a letter with an attachment (Exhibit "1"). He turned over six (6) $9,000.00 checks all in the name of Jeanne M. Sullivan which he had in his possession and which were reported missing by Suzanne Xanthos. (T. Lefevre; and Exhibit "1"). He also turned over 888 shares of Tootsie Roll Stock (Green), 1088 shares of Tootsie Roll Stock (Red), 520 shares of Cadbury Schwepps Stock, as well as a Cadbury Schwepps dividend check all of which were owned by the Plaintiff, Jeanne M. Sullivan and in his possession (T. Lefevre; and Exhibit "1").

-3-

After the meeting on July 11, 2003, David J. Sullivan failed to cooperate with Matthew

Lefevre as he had promised.  (T. Lefevre)  He ignored Matthew Lefevre's July 19, 2002 letter (T.

Lefevre; and Exhibit "2").  He ignored two follow-up letters.  (T. Lefevre).  Although Attorney

Franklin responded to Attorney Lefevre's letter dated July 19, 2002 on September 4, 2002, he did

not provide any of the information Attorney Lefevre requested.  (T. Lefevre; and Exhibit "5").

In his letter dated September 4, 2002, Attorney Franklin admitted that Jeanne M. Sullivan

"made the competent and conscious decision to have her son David who resided in Bermuda

assist her with her financial affairs to the exclusion of her daughter, Ms. Xanthos who lived next

door" (Exhibit "5", p.1).

Attorney Franklin stated:

> Your approach has been further compounded by your refusal to accept
> our repeated representation that Mr. Sullivan conducted his financial
> affairs in a unique manner utilizing off shore accounts in Bermuda to
> assist him in this regard.  He, unlike Ms. Xanthos, trusted David
> Sullivan.  Ms. Sullivan, unlike Ms. Xanthos, trusted David Sullivan.
> Accordingly for reasons of their own, they were content to allow David
> Sullivan to assist them in handling their financial affairs through
> institutions in Bermuda without the benefit of a paper trail, and in a
> position of trust that one would not normally question between partners
> and a trusted son (Exhibit "5", p.3).

Attorney Franklin also admitted:  "Likewise in her later years, Ms. Sullivan decided to make

Sullivan a signatory on her bank accounts."  (Exhibit "5", p.3).

In his letter, Attorney Franklin also stated:

> With regard to your letter, David Sullivan told you that he holds
> the 1,000 Varian Shares to which you refer. His father entrusted
> those shares to him during his lifetime. David in turn saw that the
> dividends on those shares inured initially to the benefit of his father
> and thereafter his mother. He bought the shares from his mother at
> a publicly traded price as of December 31, 1999 paying her cash
> therefore in early 2000. (Exhibit "5", p.5).

Attorney Franklin went on to state:

> With regard to funds forwarded to Bermuda, there is a forty (40)
> year history of such transactions involving multiple addresses and
> institutions on the island . . . David Sullivan is not aware of any
> significant sum of money being diverted from either of his parents
> to Bermuda and certainly has no knowledge of any such money
> being diverted to him rather than ultimately to the parent to whom
> such money was owed. (Exhibit "5", p.5).

Contrary to Attorney Franklin's representations, David Sullivan did divert cash and other

assets of his mother's to Bermuda. (T. Lefevre). For example, he moved $600,000.00 of

cashier's checks drawn on an account held by his mother at National Iron Bank in Connecticut

and he deposited those checks into Account No. 20006840705780100 at the N.T. Butterfield &

Son, Limited in Bermuda. (T. Lefevre; and Exhibit "6"). David Sullivan owned and still owns

that account. (Exhibit "19", Responses #35, #36 and #43; Exhibit "20", Responses #14 and #77;

Exhibit "21",Response #2;).

The Defendant, David J. Sullivan, also deposited a $8,414.75 check from Corner Realty

30/7, Inc. into his account in Bermuda. (T. Lefevre; and Exhibit "8").

-5-

The Defendant, David J. Sullivan, used these funds which he obtained from his mother while acting as her trusted financial advisor for his own benefit. (T. Lefevre; Exhibit "20", Response #1).

On or about April 19, 2000, the Defendant, David J. Sullivan, deposited $93,256.76 into his mother's Account No. 20006840217752100 at the Bank of N.T. Butterfield & Son, Ltd. in Bermuda. He controlled that account. (T. Lefevre; and Exhibit "7"). Thereafter, David J. Sullivan, withdrew $90,000.00 from this account. (Exhibit "7"). Attorney Lefevre testified that there was no reflection in the volumes of records he reviewed that David J. Sullivan ever returned that $90,000.00 to his mother, Jeanne M. Sullivan.

David J. Sullivan also admitted that he has signed his mother's name on documents, checks, checks made out to himself and even checks to pay some of his bills. (T. Lefevre; and Exhibit "21", #3, #4, #5 and #6).

The Varian Stock was recorded as an asset of Jeanne M. Sullivan's up until January, 1999 (T. Lefevre). On July 11, 2002, David J. Sullivan stated that he bought this asset for cash. (T. Lefevre; and Exhibit "5"). Matthew Lefevre testified that this was an unusual way to do business and that he had never seen such a transaction in all his years of practicing law. Stock is usually not bought for cash and there should be a paper trail. (T. Lefevre). No cash was ever reported as being received by Jeanne M. Sullivan. (T. Lefevre). This was also unusual since David J. Sullivan was helping his mother do her taxes. (T. Lefevre).

-6-

Matthew Lefevre requested information from Kathryn Beers, Jeanne M. Sullivan's accountant who dealt directly with David J. Sullivan concerning Jeanne M. Sullivan's tax returns. (T. Lefevre). Kathryn Beers told Attorney Lefevre that on several occasions she requested information from David J. Sullivan regarding the value of the Varian Stock and that David J. Sullivan failed to give Ms. Beers this information. (T. Lefevre).

Matthew Lefevre also testified that the Herley Stock was also missing. The Herley Stock was valued at $454,000.00. (T. Lefevre). The Herley Stock was originally in Jeanne M. Sullivan's husband's name. It had previously been reported by Jeanne M. Sullivan and her husband on their tax return in 1990. (T. Lefevre). It was also reported by Jeanne M. Sullivan's husband in his financial statement dated 1988. The Sullivans tax returns did not reflect that a gift was made. It also did not reflect any capital gain or loss due to the sale of stock. (T. Lefevre). There was also no reflection of a check or money being deposited into any of Jeanne M. Sullivan's accounts. The stock just vanished after Jeanne M. Sullivan's husband died on November 14, 1990. That is when David J. Sullivan started handling the probate of his father's estate as well as his mother's financial affairs. (T. Lefevre).

Matthew Lefevre also testified that he obtained an Order from the Probate Court to enter David J. Sullivan's safety deposit Box #33 at the National Iron Bank. (T. Lefevre). Sometime prior to Matthew Lefevre's appointment as Conservator, David J. Sullivan emptied the contents from a safety deposit box in the National Iron Bank which he held jointly with his mother and

deposited the contents into his own safety deposit box #33. Attorney Lefevre suspected that

Jeanne M. Sullivan's assets were present in box #33. The box was opened and in it Attorney

Lefevre found $40,000.00 in cash. (T. Lefevre).

David J. Sullivan admitted to Matthew Lefevre on July 11, 2002 that he signed his

mother's name on her checks (T. Lefevre). David J. Sullivan made out at least one check to

himself in the amount of $9,000.00. (T. Lefevre; Exhibit "21", Response #4; and Exhibit "13").

Matthew Lefevre also testified that he found another $742,000.00 worth of assets which

were unaccounted for. (T. Lefevre). Although he had asked David J. Sullivan and his attorney

for information concerning all of these assets, neither David J. Sullivan nor his attorney ever

complied with his request. (T. Lefevre).

David J. Sullivan also tried to hide his actions by sending letters to New Mil Bank, to

National Iron Bank and to Kathryn Beers. (T. Lefevre; Exhibits "16", "17"and "18"). On

August 30, 2001, Jeanne M . Sullivan revoked the Power of Attorney she gave David J. Sullivan

and gave Suzanne Xanthos Power of Attorney instead. (T. Lefevre; and Exhibit "24"). Jeanne

M. Sullivan had complained to Suzanne Xanthos that David J. Sullivan was stealing from her.

(T. Lefevre). Acting as her mother's attorney in fact, Suzanne Xanthos tried to verify what her

brother, David J. Sullivan, had done with their mother's assets. She started to contact those with

information concerning her mother's financial affairs. (T. Lefevre). In order to thwart Suzanne

Xanthos' inquiries, David J. Sullivan sent letters or e-mails to various institutions and requested

-8-

that those institutions "not comply with any request for financial information from Suzanne Xanthos." (Exhibits "16", "17" and "18").

Matthew Lefevre testified that based on David J. Sullivan's confidential relationship with his mother and based on the fact that approximately $2,000,000.00 of assets were missing and based on the fact he had pled fraud in his Complaint, that it was probable after trial that a recovery would be made in the amount of $2,200,000.00. (T. Lefevre).

## II     LAW

Plaintiffs in civil actions in the United States District Court for the District of Connecticut are entitled to seek relief under the prejudgment remedy (PJR") procedures established by the State of Connecticut. Fed. R. Civ. P. 64; Conn. R. Civ. P. 5(c); see also Inter-Regional Financial Group, Inc. v. Hashemi, 562 F.2d 152, 154 (2d Cir. 1977). Connecticut law defines a PJR as "any remedy or combination of remedies" that enables a person to attach the property of a defendant in a civil action. See Conn. Gen. Stat. §52-278a(d).

Connecticut law provides that a PJR should be awarded where the plaintiff seeking the remedy shows there is "probable cause" to sustain the validity of her claim. See Conn. Gen. Stat. §52-278d (2002); see also Bank of Boston Connecticut v. Schlesinger, 220 Conn. 152, 156, (1991). The probable cause necessary to sustain a PJR has been defined as "the good faith belief in the existence of facts essential for the action which would convince the hypothetical reasonable person of the merits of the action." Ledgebrook Condominium Assn., Inc. v. Lusk

Corp., 172 Conn. 577, 584 (1977), <u>Cordoba Shipping Co., LTD v. Maro Shipping LTD</u>, 494 F. Supp. 183, 187 (1980). "The uncontradicted statement of an affiant that he believes that recovery of a stated sum is probable, together with a finding of facts which reasonably support the affiant's belief, will ordinarily justify a holding of probable cause." <u>Cordoba Shipping Co., LTD v. Maro Shipping LTD</u>, 494 F. Supp. 183, 187 (1980).

A federal district court can effectuate a PJR issued under Connecticut law by ordering parties over whom the court has in personam jurisdiction to take or refrain from taking certain actions. See <u>Hashemi</u>, 562 F.2d at 154. The district court's authority to issue such ancillary orders is based on the court's in personam jurisdiction, which gives the court inherent equitable authority to order a party to do certain acts either within or outside the court's territorial jurisdiction. <u>Fleming v. Gray Manufacturing Co.</u>, 352 F. Supp. 724, 726 (D. Conn. 1973). The broad authority conferred on a court by the exercise of in personam jurisdiction serves the important policy of preventing a party from frustrating justice by removing assets from the court's territorial jurisdiction. <u>Hamma v. Gradco Systems Inc.</u>, No. B:88-115 (JAC), 1992 U.S. Dist. LEXIS 17601, at *9, (Nov. 4, 1992) (copy attached).

Ancillary orders issued by courts in effectuating prejudgment remedies may have the effect of injunctions, but such orders need not satisfy the requirements governing injunctions in Rule 65 of the Federal Rules of Civil Procedure. <u>Id</u>. at 10. Federal courts routinely issue ancillary orders in conjunction with prejudgment remedies without finding a "likelihood of

success on the merits" or requiring that the plaintiff post a bond. See Hashemi, 562 F.2d. at 154;

Fleming, 352 F. Supp. at 726.

In Hashemi, the Second Circuit held "Rule 64 of the Federal Rules of Civil Procedure

makes available to Federal District Courts of all remedies providing for the seizure of property to

secure satisfaction of a judgment in the same manner as provided by the law of the State in which

the Court is sitting." (Heshami, p.154).  The Second Circuit Court went on to state that a District

Court may issue an injunction in aid of attachment which may take the form of a mandate

requiring the Defendant to bring stock certificates into the state and deliver them to the physical

control and possession of a sheriff.  Hashemi at 154, 155.

The Second Circuit also held that if the District Court has personal jurisdiction over a

Defendant and if justice and the reasonable demands of a situation warrant, the Court may order

the Defendant to do or refrain from doing certain acts in another state.  Columbia, Nastri &

Carbone v. Columbia Ribbon & Carbon Mfg. Co., 367 F.2d. 308, 313 (2d Cir. 1966).

## III.    ARGUMENT

The Plaintiff moves  that a PJR in the amount of Two Million Two Hundred Thousand

and 00/100 ($2,200,000.00) Dollars issue against David J. Sullivan.  The Plaintiff also moves

that David J. Sullivan be Ordered to deliver passbooks, stock certificates, bonds and any other

securities to the Clerk of this Court in an amount of Two Million Two Hundred Thousand and

00/100 ($2,200,000.00) Dollars on the basis that the Plaintiff has established probable cause to

sustain the validity of her claim that David J. Sullivan took approximately Two Million and

00/100 ($2,000,000.00) Dollars from her property and on the basis that it will cost at least

$200,000.00 in legal fees to recover this property.

### A. **Probable Cause Exists to Sustain a Claim for Fraud Against David Sullivan.**

Generally, for the Plaintiff to prevail on a claim of fraud, four (4) elements must be established:

  1.  A representation of an existing fact;

  2.  The representation must have been untrue and either known by the defendant to be untrue or made without belief in its truth or careless disregard as to whether it was true or false;

  3.  It must have been made for the purpose of inducing the plaintiff to act upon it; and

  4.  The plaintiff must have been in fact induced by such representations to act.

Helming v. Kashak, 122 Conn. 641, 642-43 (1937); Lowe v. Kohn, 128 Conn. 45, 50

(1941); Paiva v. Vaneck Heights Construction Co., 159 Conn. 512, 515 (1970).

In non-disclosure or concealment cases, where parties to a transaction stand towards each

other in a relationship of trust and confidence, such as a trustee who is dealing with a person

from whom he held property or money in trust, there is a duty to disclose all the facts.  Johnson

& Burns, Inc. v. Hayden, 98 Conn. 185, 189 (1922); Arrigoni v. Adorno, 129 Conn. 673, 679

(1943).  A person in such a position of trust may not take advantage of someone that looks to

him to protect her interests.  Haddad v. Clark, 132 Conn. 229, 223 (1945).

-12-

In <u>Martinelli v. Bridgeport Roman Catholic Dioceses, Incorporation</u>, 196 F.3d 409 (2nd

Cir. 1999), the Second Circuit held:

> The Connecticut Supreme Court has recently reiterated its rule that
> where an allegation of fraud, self-dealing, or conflict of interest is
> made against a fiduciary, the burden then shifts to the fiduciary to
> prove that it acted fairly:
>
> Our law on the obligations of a fiduciary is well settled.  A fiduciary
> or confidential relationship is characterized by a unique degree of
> trust and confidence between the parties, one of whom has superior
> knowledge, skill or expertise and is under a duty to represent the
> interests of the other.  The superior position of the fiduciary or
> dominant party affords him great opportunity for abuse of the
> confidence reposed in him.  Once a fiduciary relationship is found
> to exist, the burden of proving fair dealing properly shifts to the
> fiduciary.
>
> Furthermore, the standard of proof for establishing fair dealing is
> not the ordinary standard of fair preponderance of the evidence, but
> requires proof either by clear and convincing and unequivocal
> evidence.  Proof of a fiduciary relationship, therefore, generally
> imposes a twofold burden on the fiduciary.  First, the burden of
> proof shifts to the fiduciary; and second, the standard of proof is
> clear and convincing evidence. <u>Murphy v. Wakelee</u>, 247 Conn.
> 396, 400, 721 A.2d 1181, 1183-84 (1998) (citation and quotation
> marks omitted).
>
> <u>Martinelli v. Bridgeport Roman Catholic Dioceses, Incorporation</u>,
> 196 F.3d 409, 420, 421 (2nd Cir. 1999).

The facts here show that David J. Sullivan abused his position of trust and took his

mother's assets from her.  He (1) used his mother's trust and confidence to influence and control

her; (2) he represented that he would take care of her financial affairs and use her assets as for her

-13-

benefit only; (3) he made the representations recklessly with the intent on deceiving her; and (4) she relied on those representations and in fact was deceived and suffered damages.

The probable cause standard has been met. David J. Sullivan failed to present any contrary evidence whatsoever.

**B.     Probable Cause Exists to Sustain a Claim for Negligent Misrepresentation Against David Sullivan.**

The test of negligent misrepresentation involves the breach of a duty to exercise reasonable care in communicating information upon which another may reasonably be expected to rely in conducting their affairs. Eremita v. Stein, No. CV 94-0463210 S, 1995 Conn. Super. LEXIS 3096, at *11 (Nov. 2, 1995).

> The ultimate test of the existence of a duty to use care is found in the foreseeability that the harm may result if it is not exercised. The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipated that harm of the general nature of that suffered was likely to result?. Id.

In establishing that the defendant supplied false information, the plaintiff must present evidence that the defendant "made a representation to the plaintiff that was untrue or should have been known to be untrue." Barry v. Posi-Seal International, Inc., 36 Conn. App. 1, 21, (1994). A claim for negligent misrepresentation can also be based on a defendant's failure to speak when he has a duty to do so. DePasquale v. Day, Berry & Howard, 9 CSCR 550, 551 (Mar. 31,1994, Berger, J.)

-14-

In this case, Jeanne Sullivan reasonably relied, to her detriment, on David Sullivan's misrepresentations of her financial affairs and the location of her assets. As her son and her attorney-in-fact, David Sullivan failed to exercise reasonable care in communicating what he was doing with her assets and/or property. He altered his mother's existing estate plan, transferred large sums of his mother's money to his personal account in Bermuda and altered his mother's banks accounts without any notice to his mother. Likewise, when he was confronted with questions regarding the status and location of his mother's assets he refused, and still refuses to disclose the location of the missing assets.

**C.     Probable Cause Exists to Sustain a Claim for Undue Influence Against David Sullivan.**

Undue influence is the exercise of sufficient control over the person, the validity of whose acts is brought into question, to destroy her free agency and constrain her to do what she would not have done if such control had not been exercised. Reynolds v. Molitor, 184 Conn. 526, 528, (1981). Because direct evidence of intent is difficult to obtain, undue influence may be proved circumstantially. Salvatore v. Hayden, 144 Conn. 437, 440, (1957). Relevant circumstances include the grantor's health and its effect upon her mental and physical functions, her dependence upon the person alleged to have influenced her, and the opportunity to exert influence available to that person. Collins v. Erdmann, 122 Conn. 626, 632, (1937). Mere

physical weakness or disease, eccentricities, blunted perceptions, weakening judgment, failed memory or mind are not necessarily inconsistent with mental capacity, <u>Turner's Appeal</u>, 72 Conn. 305, 320 (1899).

The transfers of property from the Plaintiff, Jeanne M. Sullivan, to her trusted friend, David J. Sullivan were accomplished by the Defendant, David J. Sullivan, exerting undue influence over his mother.

Jeanne M. Sullivan was in a weakened, mental, physical and/or emotional condition and was later diagnosed with dementia and eventually provided with both a conservator on the estate and a conservator of her person.

During this state of confusion, in the years 2001 and 2002, David J. Sullivan made many transfers to himself of his mother's assets.

### D. <u>Probable Cause Exists to Sustain a Claim for Unjust Enrichment Against David Sullivan.</u>

A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and a good conscience for one to retain a benefit which has come to him at the expense of another. <u>Meaney v. Connecticut Hospital Assn.</u>, 250 Conn. 500, 511 (1999). A plaintiff seeking recovery for unjust enrichment must prove: (1) that the defendant was benefited; (2) that the defendant unjustly did not pay the plaintiff for the benefits; and (3) that the failure of payment was to the plaintiff's detriment. <u>Barbara Weisman, Trustee v. Kaspar</u>, 233 Conn. 531, 550 (1995).

-16-

The facts here show that David Sullivan has benefited unjustly to his mother's detriment. David Sullivan admitted that his mother did not make any gifts to him while he was her attorney in fact. Nevertheless, he is in possession of a substantial amount of his mother's assets, assets which are in his name and which he has exclusive control over. He has misappropriated these assets and cannot or refuses to account for their location.

### E.    Probable Cause Exists to Sustain a Claim for a Constructive Trust Against David Sullivan.

A constructive trust arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. Giulietti v. Giulietti, 65 Conn. App. 813, 856 (2001). When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interests, equity converts him into a trustee. Schmaling v. Schamaling, 48 Conn. App. 1, 18 (1998). The party sought to be held liable for a constructive trust must have engaged in conduct that wrongfully harmed the plaintiff. Id. The enforcement of a constructive trust is subject to the equitable discretion of the court. Wendell Corp., Trustee v. Thurston, 239 Conn. 109, 120 (1996).

The Defendant, David Sullivan obtained legal title to assets and/or property of the Plaintiff, Jeanne Sullivan, in a manner contrary to equity and good conscience.  David Sullivan obtained the legal right to many of his mother's assets and/or property by means of fraud, duress, abuse of confidence and other forms of unconscionable conduct.  His conduct has harmed his mother and continues to harm his mother.

**F.**    **Probable Cause Exists to Sustain a Claim for Larceny Against David Sullivan.**

General Statutes " 53a-119 (1) provides that AA person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. See Conn. Gen. Stat. §53a-119 (2002).  Larceny includes, but is not limited to: (1) Embezzlement; (2) Obtaining property by false pretense; and (3) Obtaining property by false promise. Id.  "A person commits embezzlement when he wrongfully appropriates to himself or to another property of another in his care or custody." Id.  A person obtains property by false pretense when by any false pretense, token or device, he obtains from another property, with intent to defraud him or any other person. Id.  A person obtains property by false promise when, pursuant to a scheme to defraud, he obtains property of another by means of a representation, express or implied, that he or a third person will in the future engage in particular conduct, and he does not intend to engage in such conduct. Id.

19

In this case, David Sullivan committed numerous acts of larceny against his mother.

Jeanne Sullivan was in David Sullivan's care when he began embezzling his mother's assets.

David Sullivan accepted the responsibility of acting as his mother's attorney-in-fact with the

intent of defrauding his mother and misappropriating her assets.  David Sullivan represented to

his mother that he would engage in particular conduct, i.e. overseeing her finances, when he had

no intention of every looking out for her best interest.

### G.    Probable Cause Exists to Sustain a Claim for Forgery Against David Sullivan.

A person is guilty of forgery in the first degree when, with intent to defraud, deceive or

injure another, he falsely makes, completes or alters a written instrument or issues or posses any

written instrument which he knows to be forged, which is or purports to be, or which is

calculated to become or represent if completed; (1) Part of an issue of money, stamps, securities

or other valuable instruments issued by the government or governmental instrumentality; or part

of an issue of stock, bonds or other instruments representing interests in or claims against a

corporate or other organization or its property. See Conn. Gen. Stat. §53a-138 (2002).

David Sullivan intentionally defrauded his mother by falsely completing numerous

written instruments which he knew to be forged. David Sullivan forged his mother's name on her

bank checks made payable to himself, on checks made payable to his creditors and on change of

address forms of dividend checks made payable to his mother.  He intentionally defrauded his

mother and falsely altered these written instrument in order to wrongfully appropriate property of another in his care or custody,

**H.    Probable Cause Exists to Sustain a Claim for Conversion of Property Against David Sullivan.**

Conversion is an unauthorized assumption and exercise of the right of ownership over goods belonging to another, to the exclusion of the owner's rights. Devitt v. Manulik, 176 Conn. 657, 660 (1979). To establish a prima facie case of conversion, a plaintiff must demonstrate that (1) the property belonged to the plaintiff, (2) that the defendant deprived the plaintiff of the property for an indefinite period of time, (3) that the defendant's conduct was unauthorized, and (4) that the defendant's conduct harmed the plaintiff. Merritt v. Fagan, No: CV990337866 S, 2002 Conn. Super. LEXIS 1771, at *6, (May 2002). In order for a plaintiff to prevail on a cause of action in conversion, the court must find by clear and convincing evidence that the defendant had converted the plaintiff's property. Suarez-Negrete v. Trotta, 47 Conn. App. 517, 518 (1998).

In this case, David Sullivan , without authorization, deprived his mother of her property with the intention of never returning the property or using it for her benefit. He transferred substantial sums of money in his mother's accounts to his own personal accounts in Bermuda. He did this without notifying his mother and presently refuse to disclose other assets he misappropriated from his mother.

21

**I.    Probable Cause Exists to Sustain a Claim for Negligence Against David Sullivan.**

The prudent investor rule, which is the usual touchstone for evaluating the propriety of trust investments, requires that a trustee observe how men of prudence, discretion and intelligence manage their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, considering the probable income, as well as the probable safety of the capital to be invested. Jackson v. Conland, 178 Conn. 52, 52 (1979).

David Sullivan had a fiduciary responsibility to manage his mother's financial affairs and use her assets for her benefit as a prudent investor.  He breached that duty and negligently carelessly and/or recklessly acted without regard for the rights of his mother and moved funds out of prudent investments causing Jeanne Sullivan substantial financial harm.

**IV.    Uncontradicted Statements**

The Supreme Court of Connecticut in Ledgebrook Condominium Association, Inc. v. Lusk Corp., 172 Conn. 577 (1977) held that the uncontradicted statement of an affiant that he believes that the recovery of a stated sum is probable together with a finding of facts which reasonably support the affiant's belief, will ordinarily justify a holding of probable cause. Id. at 586.

22

The Plaintiff, Jeanne M. Sullivan, through her Conservator, Matthew Lefevre, made uncontradicted statements. He testified that the following was taken by David J. Sullivan:

$608,414.75.......................................Deposited into David J. Sullivan's account at the N.T. Bank of Butterfield & Son, Ltd. in Bermuda ($600,000.00 cashier's checks (Exhibit "6") and $8,414.75 Corner Realty 30/7 Inc.'s check (Exhibit "8")

$90,000.00........................................Check from Corner Realty 30/7, Inc. deposited and were withdrawn from Jeanne M. Sullivan's account at the Bank of N.T. Butterfield & Son, Ltd. in Bermuda (Exhibit "7")

$454,000.00.......................................Herley Stock

$30,000.00 - $60,000.00 ....................Varian Stock

$742,000.00.......................................Unaccounted for Assets

$9,000.00...........................................Check made out to David Sullivan himself (Exhibit "13")

$1,400.00 ...........Core States check to close Account of Jeanne M. Sullivan's husband in 1998 (Exhibit "23").

**$1,934,814.75 - $1,964,814.75        Total**

Matthew Lefevre believes that recovery of $2,200,000.00 is probable because he will be able to collect $1,964,400.00 plus the attorney's fees on the fraud claim. This evidence was not contradicted by the Defendant, David J. Sullivan. Therefore, the Prejudgment Remedy should issue in the amount of $2,200,000.00.

## V.    Ancillary Order Based on Court's In Personam Jurisdiction

The District Court has authority to issue ancillary orders based on its in personam jurisdiction.  Hashemi, at 154; Fleming, at 726.

In this case, the Plaintiff moves the Court based on its in personam jurisdiction to require the Defendant, David J. Sullivan, to turn over to the Clerk of this Court the passbook to his account at Bank of N.T. Butterfield & Son, Ltd., Account No. 20006840705780100 in Bermuda as well as any other passbook he holds at any bank sufficient to satisfy an attachment for $2,200,000.00.

Furthermore, if the passbooks demonstrate that David J. Sullivan doe not have sufficient funds to satisfy a $2,200,000.00 Prejudgment Remedy, then the Plaintiff moves that the Defendant, David J. Sullivan be Ordered to turn over to the Clerk of the Court any shares of stock he has in any company, including but not limited to the Varian Stock he allegedly purchased from his mother for cash.

Furthermore, if the passbooks and the stocks do not provide sufficient security to satisfy a $2,200,000.00 Prejudgment Remedy then the Plaintiff moves that the Defendant turn over to the Clerk of the Court other sufficient personal property such as cash, or, bonds he may own sufficient to satisfy an attachment of $2,200,000.00.

Furthermore, the Plaintiff moves that David J. Sullivan be Ordered not to attempt in any way to withdraw from any of these accounts or to sell any of these stocks, bonds or other securities he turns over to the Clerk of the Court.

Furthermore, the Plaintiff moves that David J. Sullivan be Ordered to provide the Court with a Sworn Financial Affidavit indicating the value of all assets he presently holds and/or has held since May 29, 2002, the date the Plaintiff filed this Federal Complaint in this matter.

PLAINTIFF,
JEANNE M. SULLIVAN

By_____
    Owen P. Eagan, Esq.
    Eagan & Donohue
    24 Arapahoe Road
    West Hartford, CT 06107
    Federal Bar No. ct00716
    (860)232-7200
    Her Attorney

25

**CERTIFICATION**

This certifies that the foregoing Memorandum of Law was mailed First Class, postage prepaid this 5th day of March, 2004 to:

William C. Franklin, Esq.
Cramer & Anderson
P.O. Box 278
46 West Street
Litchfield, CT 06759

Matthew J. Lefevre, Esq.
241 Asylum Street, 3rd Floor
Hartford, CT 06103

Owen P. Eagan

*X01.Civil.P48.MemorandumOfLaw/st*

26