UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

FILED
2004 MAR 29 A 11:00
U.S. DISTRICT COURT
HARTFORD, CT.

JEANNE M. SULLIVAN,
    -Plaintiff

-v-                                    CIVIL 3:02CV916(CFD)(TPS)

DAVID J. SULLIVAN,
    -Defendant

## RULING ON PLAINTIFF'S MOTION FOR PREJUDGMENT REMEDY

The plaintiff, Jeanne M. Sullivan, commenced this action to recover personal property and/or real estate, including cash, securities checks, and personal documents which were allegedly taken fraudulently or otherwise by the plaintiff, David J. Sullivan, her son. (Compl. ¶ 1). Pending before the court is the plaintiff's Motion for Prejudgment Remedy ("PJR"). (Dkt. #53). As explained below, the plaintiff's motion is **GRANTED**.

I.

Jeanne Sullivan was and is a resident of Sharon, Connecticut. (Compl. ¶ 2). David Sullivan, her son, is a resident of Bermuda. (Answer ¶ 4). Matthew LeFevre is currently the Conservator of Jeanne Sullivan's estate. After an examination of the documents filed herein and after taking testimony from Mr. LeFevre, the court

finds the following.

James J. Sullivan, the plaintiff's husband, died on November 14, 1990. (Answer ¶ 9). After his death, Jeanne Sullivan entrusted her son to handle her financial affairs. (Answer ¶ 11). On September 17, 1991, she executed a Durable Power of Attorney in favor of David J. Sullivan and made him Attorney in Fact. (Answer ¶ 12; Pl.'s Ex. 25).

Mr. LeFevre met with David Sullivan, along with his counsel, Attorney William Franklin, on July 11, 2002, as part of his review of Jeanne Sullivan's financial affairs. (Testimony of Mr. LeFevre). At that meeting, he admitted to Mr. LeFevre that he had handled his mother's financial affairs for approximately ten years. (Id.). In addition, he claimed to have purchased $30,000.00 to $60,000.00 worth of Varian stock from his mother, yet her tax returns neither reflected the sale nor a gift. Furthermore, David Sullivan relinquished certain assets which belong to his mother that were in his possession: keys to certain safe deposit boxes, 888 shares of Tootsie Roll stock (green), 1,088 shares of Tootsie Roll stock (red), 520 shares of Cadbury Schweppes stock, a Cadbury Schweppes dividend check in the amount of $93.86, and six cashier's checks, each in the amount of $9,000.00. (Pl.'s Ex. 1).

After the meeting, David Sullivan did not cooperate with Mr. LeFevre, ignoring several letters and requests for information. (Testimony of Mr. LeFevre; Pl.'s Exs. 2). In addition, evidence surfaced which indicated to Mr. LeFevre that David Sullivan was

diverting cash and other assets of his mother's to Bermuda. (Testimony of Mr. LeFevre). For example, David Sullivan moved $600,000.00 of cashier's checks drawn on an account held by his mother at National Iron Bank in Connecticut and he deposited those checks into an account which he owned at the N.T. Butterfield & Son, Limited, a bank in Bermuda ("Butterfield"). (Testimony of Mr. Lefevre; Pl.'s Ex. 6, 19-21). Moreover, David Sullivan also deposited a check in the amount of $8,414.75 from Corner Realty 30/7, Inc. Into that account. (Testimony of Mr. LeFevre; Pl.'s Ex. 8).

Furthermore, on or about April 19, 2000, David Sullivan deposited $93,256.76 into an account at Butterfield in his mother's name which he controlled. (Testimony of Mr. LeFevre; Pl.'s Ex. 7). Thereafter, he withdrew $90,000.00, which remains unaccounted for. (Id.). Additionally, David Sullivan admitted to having signed his mother's name on documents, checks, checks made out to himself, and checks to pay some of his bills. (Testimony of Mr. LeFevre; Pl.'s Ex. 21). Also, Mr. LeFevre testified that Jeanne Sullivan's Herley stock was missing since David Sullivan had taken over his mother's financial affairs. (Testimony of Mr. LeFevre). It was valued at $454,000.00. (Id.). Mr. LeFevre is unable to account an additional $742,000.00 worth of assets.

Mr. LeFevre, upon obtaining an order from probate court, opened David Sullivan's safety deposit box at National Iron Bank and found $40,000.00. (Id.). David Sullivan had previously

-3-

emptied a safety deposit box which he held jointly with his mother. (Id.).

Because she believed that her son was stealing from her, Jeanne Sullivan, on August 30, 2001, revoked her son's power of attorney and instead executed a Durable Power of Attorney in favor of her daughter, Suzanne Xanthos. (Testimony of Mr. LeFevre; Pl.'s Ex. 24). Ms. Xanthos thereafter attempted to piece together what had happened to her mother's assets. (Testimony of Mr. LeFevre). She contacted certain institutions for an accounting. In response, David Sullivan sent letters and e-mails to various banks and to Kathryn Beers, his mother's accountant, which indicated that his mother did not authorize Ms. Xanthos to act on her behalf and, as such, asked that they "not comply with any request for financial information from Suzanne Xanthos." (Pl.'s Exs. 16-18).

II.

Rule 64 of the Federal Rules of Civil Procedure entitles plaintiffs in a civil action to seek relief under the PJR procedures established by the State of Connecticut.[1] Fed. R. Civ.

---

[1] Rule 64 of the Federal Rules of Civil Procedure states, in pertinent part, that

> [a]t the commencement of and during the course of an action, all remedies providing for seizure of a person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought,

-4-

P. 64 (2004); see also Inter-Regional Financial Group, Inc. V. Hashemi, 562 F.2d 152, 154 (2d Cir. 1977). Under Connecticut law, PJR means "any remedy or combination of remedies that enables a person by way of attachment, foreign attachment, garnishment or replevin to deprive the defendant in a civil action of, or affect the use, possession or enjoyment by such defendant of, his property prior to final judgment but shall not include a temporary restraining order." Conn. Gen. Stat. § 52-278a(d) (2003). That said, "[n]o prejudgment remedy is available to a person in any action unless that person has complied with the provisions of General Statutes §§ 52-278a through 52-278g, which provisions govern prejudgment remedies." Essez Group, Inc. v. Ducci Elec. Co., Inc., 181 Conn. 524, 525 (Conn. 1980).

Under Connecticut law, a court shall grant a PJR motion if "upon consideration of the facts before it and taking into account any defenses, counterclaims or set-offs, claims of exemption and claims of adequate insurance, [the court] finds that the plaintiff has shown *probable cause* that such a judgment will be rendered in the matter in the plaintiff's favor in the amount of the prejudgment remedy sought. . . ." Conn. Gen. Stat. § 52-278d(a) (emphasis added). A court shall exclusively consider

> (1) whether or not there is probable cause that a judgment in the amount of the prejudgment remedy sought,

subject to [certain qualifications].

Fed. R. Civ. P. 64.

>   taking into account any defenses, counterclaims or set-offs, will be rendered in the matter in favor of the plaintiff, (2) whether payment of any judgment that may be rendered against the defendant is adequately secured by insurance, (3) whether the property sought to be subjected to the prejudgment remedy is exempt from execution, and (4) if the court finds that the application for the prejudgment remedy should be granted, whether the plaintiff should be required to post a bond to secure the defendant against damages that may result from the prejudgment remedy or whether the defendant should be allowed to substitute a bond for the prejudgment remedy.

Id.

The Connecticut Supreme Court has stated that "[p]roof of probable cause as a condition of obtaining a prejudgment remedy is not as demanding as proof by a fair preponderance of the evidence." Ledgebrook Condo. Ass'n, Inc. v. Lusk Corp., 172 Conn. 577, 584 (Conn. 1977). "The legal idea of probable cause is a bona fide belief in the existence of facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it." Id. (citations omitted); see also Cordoba Shipping Co, LTD v. Maro Shipping LTD, 494 F.Supp. 183, 187 (D. Conn. 1980) (interpreting Ledgebrook as holding that "the uncontradicted statement of an affiant that he believes that recovery of a stated sum is probable, together with a finding of facts which reasonably support the affiant's belief, will ordinarily justify a holding of probable cause"); Goodwin v. Pratt, 10 Conn. App. 618 (Conn. App. Ct. 1987)(describing probable cause as "a flexible common sense standard. It does not demand that a belief be correct or more

-6-

likely true than false")(citing Texas v. Brown, 460 U.S. 703 (1983).

In this context, "damages need not be established with precision but only on the basis of evidence yielding a fair and reasonable estimate." Burkett v. Petrol Plus of Naugatuck, Inc., 5 Conn. App. 296, 301 (Conn. App. Ct. 1985)(citations omitted). Still, "the plaintiff bears the burden of presenting evidence which affords a reasonable basis for measuring her loss." Spera v. Audiotape Corp., 1 Conn. App. 629, 633 (Conn. App. Ct. 1984) quoted in Rafferty v. Noto Bros. Constr., 68 Conn. App. 685, 693 (Conn. App. Ct. 2002).

### III.

The court finds that probable cause exists to sustain a claim for fraud against the defendant. "The essential elements of an action in fraud are that a false representation was made as a statement of fact; that it was untrue and was known to be untrue by the party making it; that it was made to induce the other party to act on it; and that he did so act to his injury." Paiva v. Vaneck Heights Constr. Co., 159 Conn. 512, 515 (Conn. 1970)(citations omitted); Kilduff v. Adams, Inc., 219 Conn. 314, 329 (Conn. 1991)(citations omitted).

Connecticut law dictates that a "fiduciary or confidential relationship is characterized by a unique degree of trust and

confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other."  <u>Martinelli v. Bridgeport Roman Catholic Dioceses Corp.</u>, 196 F.3d 409, 420 (2d Cir. 1999)(citing <u>Murphy v. Wakelee</u>, 247 Conn. 396, 400 (Conn. 1998)).  "[W]here an allegation of fraud, self-dealing, or conflict of interest is made against a fiduciary, the burden shifts to the fiduciary to prove that it acted fairly." <u>Id.</u>  Moreover, "the standard of proof for establishing fair dealing is not the ordinary standard of fair preponderance of the evidence, but requires proof either by clear and convincing evidence, clear and satisfactory evidence or convincing and unequivocal evidence." <u>Id.</u> (citing <u>Murphy</u>, 247 Conn. at 400).

The court finds that a fiduciary relationship existed between David Sullivan and Jeanne Sullivan.  While David Sullivan "admits that on occasion, he did, at the specific request of Jeanne M. Sullivan, assist her with her financial affairs" (Answer ¶ 11), the court finds that their fiduciary relationship was much more extensive.  Most notably, on September 17, 1991, Jeanne Sullivan executed a Durable Power of Attorney in favor of David Sullivan and made him Attorney in Fact.  (Answer ¶ 12; Pl.'s Ex. 25).  In addition, Mr. Lefevre testified that a review of all of Jeanne Sullivan's records indicated that David Sullivan dealt with Attorney Linc Cornell and Kathryn Beers, a certified public accountant, on behalf of his mother in handling both her legal and tax affairs since the death of his father on November 14, 1990

until the time his Power of Attorney was revoked on August 30, 2001. (Pl.'s Mem. Supp. Mot., 3/5/04, at 2; Testimony of Matthew LeFevre).

Once a fiduciary relationship has been established, the burden shifts to David Sullivan to prove that he acted fairly. Based upon the evidence adduced at the February 27th hearing, the court finds that probable cause exists that he will not be able to sustain his burden. He is likely to fail to demonstrate, by clear and convincing evidence, that his actions, elucidated above, were taken for his mother's benefit. While the defendant points out that Connecticut employs a three-year statute of limitations for fraud (D.'s Mem. Opp. Mot., 3/4/04, at 20 (citing Travelers Indem. Co. v. Rubin, 437, 443-44; Conn. Gen. Stat. § 52-577), the three-year period begins to run when the plaintiff knew or should have known about the fraud. Lussier v. Christman, NO. CV-91-0501181-S, 1994 Conn. Super. LEXIS 2445, at *6-7 (Conn. Super. Ct. Sept. 21, 1994). As such, the defendant's contention that "[a]ny claimed losses that predate May 29, 1999 would under a theory of fraud be barred by the applicable statute of limitations" is without merit.

In addition, the court finds that probable cause exists to sustain a claim for negligent misrepresentation against David Sullivan. Citing section 552 of the Restatement (2d) of Torts (1979), the Connecticut Supreme Court remarked that "[o]ne who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business

transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." D'Ulisse-Cupo v. Bd. of Dirs. of Notre Dame High School et al., 202 Conn. 206, 217-18 (Conn. 1987).

> The test of negligent misrepresentation involves the breach of a duty to exercise reasonable care in communicating information upon which another may reasonably be expected to rely in conducting their affairs. Under this principle one making a representation or communication to such another person, may even believe [the] representation or communication to be true, but because of his lack of reasonable care in making that representation or communication it is in fact false . . . . 'The ultimate test of the existence of a duty to use care is found in the foreseeability that the harm may result if it is not exercised . . . . The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipated that harm of the general nature of that suffered was likely to result?'

Eremita v. Stein, No. CV 94-0463210S, 1995 Conn. Super. LEXIS 3096, at *11-12 (Conn. Super. Ct. Nov. 2, 1995), quoting Coburn v. Lenox Homes, Inc., 173 Conn. 567, 575-76 (Conn. 1977). Having found that probable cause exists to sustain a claim of fraud, the court finds that probable cause exists to sustain a claim of negligent misrepresentation.

Te court also finds that probable cause exists to sustain a claim for undue influence against the defendant. "'Undue influence' is the exercise of sufficient control over the person, the validity of whose act is brought in question, to destroy his free agency and constrain him to do what he would not have done if

-10-

such control had not been exercised." Reynolds v. Molitor, 184 Conn. 526, 528 (Conn. 1981). "Undue influence need not be proved by direct evidence; it may be inferred from all the circumstances." Salvatore v. Hayden, 144 Conn. 427, 440 (Conn. 1957)(citations omitted). "Among the relevant and significant circumstances are the situation of the grantor and his relation to others, his condition of health and its effect upon body and mind, his dependence upon and subjection to the persons claimed to have influenced him and their opportunity to wield such influence." Collins v. Erdmann, 122 Conn. 626, 632 (Conn. 1937)(citations omitted). Based upon the evidence presented and reasonable inferences, the court finds that probable cause exists to sustain the claim.

Having found that probable cause exists for the foregoing and based on the evidence as set forth above, the court also finds that probable cause exists to sustain a claim for unjust enrichment, a constructive trust, common law theft, forgery, conversion, or negligence. The magistrate judge finds further that the plaintiff has shown that she is likely to succeed on the merits of her claims against the defendant and that irreparable harm is likely to befall the plaintiff unless the defendant is prohibited and enjoined from transferring his property. Accordingly, the entry of an injunction by the district judge would appear to be appropriate upon application by the plaintiff, and submission to the court of a

narrowly drawn proposed order in otherwise proper form.

For the above reasons, the motion for prejudgment remedy (Dkt. # 53) is **GRANTED**.

Dated at Hartford, Connecticut this 29th day of March, 2004.

/s/ Thomas P. Smith
Thomas P. Smith
United States Magistrate Judge