FILED

2004 APR 1 ? P 1: 06

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

U.S. DISTRICT COURT
HARTFORD, CT.

```
-----------------------------------------------------
JEANNE M. SULLIVAN,                    :
                        Plaintiff,     :
                                       :    Case No. 302 CV 916 (CFD)
          against                      :
                                       :
DAVID J. SULLIVAN,                     :
                        Defendant      :    APRIL 13, 2004
-----------------------------------------------------
```

## DEFENDANT'S OBJECTION TO MAGISTRATE JUDGE'S RULING ON PLAINTIFF'S MOTION FOR PREJUDGMENT REMEDY

Pursuant to 28 U.S.C. §636 and Rule 72 of the Federal Rules of Civil Procedure, the defendant, David J. Sullivan, hereby objects to the Ruling on Plaintiff's Motion for Prejudgment Remedy issued by the Court (Smith, M.J.) on March 29, 2004 (doc. #106). As grounds for this objection, the defendant respectfully submits that the Court's ruling was clearly erroneous or contrary to law in that (1) the Court failed to rule or to make a finding as to the amount in potential damages for which probable cause was found; (2) the Court failed to properly apply and consider the defendant's affirmative defense that the statute of limitations bars the plaintiff's claims;  (3) the Court made findings of probable cause that were unsupported by the evidence presented; and (4) the Court issued a recommended ruling that the plaintiff should be entitled to injunctive relief when no such application was before the Court.

I.    **The Court Erred in Failing to Make a Finding of Probable Damages**

The standard for granting a prejudgment remedy is not merely whether the plaintiff has established that it will prevail, but whether there is probable cause to believe that judgment will be rendered in favor of the plaintiff in the amount of the prejudgment remedy sought. State v. Ham, 253 Conn. 566 (2000). A court's finding of probable damages is an integral part of the probable cause determination. Rafferty v. Noto Bros. Const., LLC, 68 Conn. App. 685, 694 (2002). Where the court does not make a finding of probable damages, a prejudgment remedy cannot stand. Id. In Rafferty, the Appellate Court reversed the trial court's order granting a prejudgment remedy and remanded the case to have the order vacated because the court did not make a finding of probable damages. Id. "Because the court failed to specify the sum to be secured, we conclude that the prejudgment remedy entered by the court was beyond the scope authorized by §52-278d and was, therefore, improper." Id.

The party requesting a prejudgment remedy bears the burden of presenting evidence which affords a reasonable basis for measuring the loss. Id. at 693.

In this case, the Magistrate Judge's ruling contains absolutely no finding relative to the amount of probable damages. Although the court makes express findings that probable cause exists to sustain a variety of claims against the defendant, the court makes no finding of probable cause as to the amount of

2

damages that the plaintiff will be able to prove she sustained as a result of the alleged claims. This is clear error.

"In undertaking the probable cause analysis that our present [prejudgment remedy] statute requires, a court is required to consider not only the validity of the plaintiff's claim but also the amount that is being sought." Union Trust Co. v. Heggelund, 219 Conn. 620, 625 (1991). This the court did not do. There is no finding of probable damages whatsoever.

Moreover, it cannot be simply be presumed that the Court in its decision intended to grant the prejudgment remedy in the full amount requested by the plaintiff in her motion as the Court's decision does not contain factual findings that would sustain the presumption. In its findings of fact, the Court refers to a total of four transactions. Those transactions include a transfer of stock in exchange for $30,000 to $60,000, the deposit of cashier's checks totaling $600,000, another deposit of $8,414.75, and a withdrawal of $90,000.00. The Court also refers to missing stock valued at $454,000 and unaccounted for assets in the amount of an additional $742,000. These are the only values identified by the Court in its ruling. Further, the Court does not identify which of these transactions or assets, if any, form the basis for its determination of the defendant's probable liability. Even if one were to assume, however, that every single one of the foregoing transactions and assets were included in the Court's consideration of damages, the total value of these

3

transactions and assets does not total $2,200,000.00, which is the amount the plaintiff requested in her motion.

There is no finding that judgment in the amount requested by the plaintiff in her motion for prejudgment remedy is likely to enter, nor does the evidence reviewed by the court in its ruling support such a finding.  It was clear error for the court to grant the prejudgment remedy absent a finding supported by evidence to establish the amount that the defendant would be liable for were the plaintiff to obtain a judgment.  See Essex Group, Inc. v. Ducci Electric Co., 181 Conn. 524, 526 (1980) (court erred in granting prejudgment remedy where plaintiff failed to establish the amount the defendant would be liable for were the plaintiff to secure a judgment).

Moreover, the lack of any specific finding as to probable damages and the amount of the prejudgment remedy is confirmed by the Court's order on the plaintiff's Motion to Compel Defendant to Sign Release and Authorization, in which the Court refers to the plaintiff's claims that the defendant has stolen or misappropriated "over one million dollars of her monies…."  The Court's ruling contained absolutely no finding of the probable amount of damages sustained by the plaintiff.

Because the court failed to make a finding as to the probable amount of damages in this case, the order granting the motion for prejudgment remedy should be vacated.

4

II.    **The Court Failed to Properly Apply Statute of Limitations Defense**

In deciding whether to grant a prejudgment remedy, the court must consider

viable defenses to the claim. Rafferty v. Noto Brothers Construciton, LLC, 68 Conn.

App. 685, 690-93 (2002). "[A]t a prejudgment remedy hearing a good defense, such

as infancy or the running of the statute of limitations, will be enough to show that

there is no 'probable cause that judgment will be rendered in the matter in favor of

the plaintiff." Augeri v. C. F. Wooding Co., 173 Conn. 426, 429 (1977). See, e.g.,

Ziniewicz v. Poleszczuk, Superior Court, Judicial District of Ansonia-Milford at Milford,

Dkt. No. CV02077015S, 2002 Conn. Super. LEXIS 654 (Feb. 27, 2002) (application

for prejudgment remedy denied where action on promissory note was barred by

statute of limitations); Doe v. Baker, Superior Court, Judicial District of New Haven,

Dkt. No. CV990427137, 2000 Conn. Super. LEXIS 44 (Jan. 10, 2000) (application for

prejudgment remedy denied where action not brought within three years of

defendant's conduct so as to bar claims pursuant to Conn. Gen. Stat. §52-577);

Swaim v. Kovacs, Superior Court, Judicial District of Stamford-Norwalk at Stamford,

Dkt. No. CV970157759, 1998 Conn. Super. LEXIS 1491 (May 27, 1998) (application

for prejudgment remedy denied where contract claims were barred by applicable

statute of limitations); Cassidento v. Mathis, Superior Court, Judicial District of

Hartford – New Britain at Hartford, Dkt. No. CV940537124S, 1997 Conn. Super.

LEXIS 1441 (May 12, 1997); Gabianelli v. Lewis, Superior Court, Dkt. No. CV91-

0036465, 1991 Conn. Super. LEXIS 1800 (Aug. 1, 1991) (application for prejudgment remedy denied where plaintiff produced no evidence to negate statute of limitations defense); DeMeo v. Stein, Superior Court, Judicial District of Fairfield at Bridgeport, Dkt. No. CV91281567, 1991 Conn. Super. LEXIS 1537 (June 19, 1991) (application for prejudgment remedy denied where 3-year statute of limitation barred action on oral contract). It is error for a court not to address a statute of limitations defense raised at a prejudgment remedy hearing. Roberts v. Caton, 224 Conn. 483, 487 n.4 (1993).

In this case, the defendant has raised the affirmative defense that all of the plaintiff's claims are barred by the applicable statute of limitations. For fraud, misrepresentation and conversion, the limitations period is three years. Conn. Gen. Stat. §52-577. For the equitable claims of undue influence, unjust enrichment or constructive trust, a three year limitations period would also likely apply by way of analogy to the similar legal claims. See Dowling v. Finley Associates, Inc., 49 Conn. App. 330, 335 (1998), reversed on other grounds, 248 Conn. 364 (1999). Because this action was commenced on May 29, 2002, the three year limitations period applicable to the plaintiff's claims would bar any claim that arose prior to May 29, 1999.

The Court's entire consideration of the defendant's statute of limitations defense is limited to the following:

> While the defendant points out that Connecticut employs
> a three-year statute of limitations for fraud (D.'s Mem.
> Opp. Mot., 3/4/04, at 20 (citing Travelers Indem. Co. v.
> Rubin, 437, 443-44; Conn. Gen. Stat. §52-577), the three-
> year period begins to run when the plaintiff knew or
> should have known about the fraud. Lussier v. Christman,
> No. CV-91-0501181-S, 1994 Conn. Super. LEXIS 2445,
> at *6-7 (Conn. Super. Ct. Sept. 21, 1994). As such, the
> defendant's contention that "[a]ny claimed losses that
> predate May 29, 1999 would under a theory of fraud be
> barred by the applicable statute of limitations" is without
> merit.

Ruling on Plaintiff's Motion for Prejudgment Remedy at 9. The Court's treatment of

the defendant's statute of limitations defense constitutes clear error.

First, Conn. Gen. Stat. §52-577, which sets forth the three-year statute of

limitations for fraud, is an 'occurrence' statute, meaning that "the three-year period

within which a party must assert its tort claims begins to run the moment the act,

injury and/or omission complained of occurs." Fenn v. Yale University, 283

F.Supp.2d 615, 636 (D. Conn. 2003) (Droney, D.J.). In construing Conn. Gen. Stat.

§52-577, the Connecticut Supreme Court has concluded that "the history of that

legislative choice of language precludes any construction thereof delaying the start of

the limitation period until the cause of action has accrued or the injury has occurred."

Fichera v. Mine Hill Corp., 207 Conn. 204, 212 (1988). The discovery rule does not

apply to the limitations period for common law fraud. Id. at 212-13 (comparing Conn.

Gen. Stat. §52-577 with §52-584, which was amended to expressly provide for the

limitation period to commence "when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered.").

Applying Conn. Gen. Stat. §52-577 to the plaintiff's claims in this case, the defendant had correctly argued that transactions that had occurred prior to May 29, 1999, were barred. Thus, the plaintiff's claims arising out of the defendant's movement of $500,000 from his mother's bank account into his own by way of depositing two cashier's checks each in the amount of $250,000, which checks were drawn in 1996 and 1997, would be barred. The plaintiff's claims relative to the Herley Industries stock which was sold in 1994 and 1995 for approximately $454,000 would also be barred. Based on these two transactions alone, nearly $1 million of the plaintiff's claims for damages are barred by the statute of limitations.

Further, even if the principle articulated by the Court were to apply to this case, the evidence established that the foregoing transactions would still be barred. In point of fact, the evidence showed that the plaintiff knew or should have known the same facts on which the plaintiff has now asserted her claims at the time of their occurrence. For example, the evidence established that the plaintiff's bank statements, financial records, and any other information relative to her finances were forwarded directly to her up until her stroke in February 2001. Thus, the plaintiff, while competent, received all such financial records. Further, there was absolutely no evidence whatsoever that the plaintiff had ever questioned the conduct of the

8

defendant or had claimed or complained to anyone that the defendant had in any

fashion misappropriated any funds or done anything improper relative to her

finances.  These facts are critical to the statute of limitations issue because Mr.

Lefevre conceded that all his information relative to the financial transactions at

issue, and on which his ward is asserting the claims contained in the complaint, was

learned through his examination of financial records that the plaintiff could have

examined at any time.  The evidence that the plaintiff had access to her own records

prior to May 29, 1999, and that the claims asserted by the plaintiff in this action are

based on information contained in those records, establishes that, to the extent that

any wrongdoing by the defendant occurred prior to May 29, 1999, the plaintiff, in the

exercise of reasonable care, should have known about it.   Accordingly, even under

the legal principle posited by the Court, nearly $1,000,000 of the plaintiff's claims for

damages are barred by the statute of limitations.

  The case of Cassidento v. Mathis, Superior Court, Judicial District of Hartford

– New Britain at Hartford, Dkt. No. CV940537124S, 1997 Conn. Super. LEXIS 1441

(May 12, 1997) is particularly instructive given the facts here.  In Cassidento, the

court denied the plaintiff's application for prejudgment remedy based on action

alleging fraud and fraudulent concealment because, as here, more than three years

had passed since the date of the acts complained of and plaintiff did not establish

that defendant intentionally concealed the facts necessary to establish his cause of action.

Further, although the Court posited that the three-year period begins to run when the plaintiff knew or should have known about the fraud, the Court never identified when the plaintiff knew or should have known of the alleged fraud so as to trigger the commencement of the limitations period. Identification of that point in time is clearly critical in order for the court to take into consideration this affirmative defense, which it must do in deciding the motion for prejudgment remedy.

The evidence establishes that the plaintiff did know or should have known, in the exercise of reasonable care, about the alleged misconduct by reviewing the financial records that were always available to her. That is in fact how Mr. Lefevre claims to have learned of the alleged misconduct. Accordingly, the defendant's statute of limitations defense should apply to all claims of wrongdoing that allegedly occurred prior to May 29, 1999.

The plaintiff is seeking a $2.2 million prejudgment remedy against an individual for claims based on certain transactions, some of which occurred as many as ten years ago. The defendant's statute of limitations defense warranted closer analysis. The Court's failure to properly apply that defense to the plaintiff's claims constituted clear error.

### III.    Plaintiff's Evidence Utterly Failed to Establish Probable Cause

Although the complaint asserts claims of fraud, misrepresentation, undue influence and other equitable claims based on the same underlying allegations of wrongdoing, the evidence adduced at the hearing on the plaintiff's motion for prejudgment remedy was utterly insufficient to establish probable cause to believe that judgment will be rendered in favor of the plaintiff.   Mere speculation does not constitute probable cause.  "While proof of probable cause is not as demanding as proof by a preponderance of the evidence, … there must be some evidence in support of the essential elements of the cause of action asserted in the complaint." Gabianelli v. Lewis, Judicial District of Ansionia-Milford at Milford, Dkt. No. CV91-0036465, 1991 Conn. Super. LEXIS 1800 (Aug. 1, 1991).

Initially, given the absence of evidence of the parties' relationship, it was clear error for the court to find that a fiduciary relationship existed between the parties. "The law will imply [fiduciary responsibilities] only where one party to a relationship is unable to fully protect its interests [or where one party has a high degree of control over the property or subject matter of another] and unprotected party has placed its trust and confidence in the other."  DeMorais v. Wisniowski, 81 Conn. App. 595, 606-07 (2004) (quoting Hi-Ho Tower, Inc. v. Com-Tronics, Inc. 255 Conn. 20, 41 (2000)).

Matthew Lefevre, who was appointed conservator of the plaintiff's estate in June 2002 – long after any of the alleged wrongdoing by the defendant, was the only witness to testify at the prejudgment remedy hearing. Mr. Lefevre conceded that all he learned relative to the financial transactions at issue was through examination of the plaintiff' s financial records. Mr. Lefevre's testimony established merely that the plaintiff had from time to time requested that the defendant, her son, assist her with certain financial transactions. Indeed, Mr. Lefevre testified that the defendant's characterization of the assistance he provided to his mother was that of a "bagboy." There was absolutely no evidence introduced as to the mental competency or financial savvy of the plaintiff up until the date of her stroke. It must be remembered that Mr. Lefevre had no personal knowledge of the relationship between the parties. As far as Mr. Lefevre knew, the plaintiff was competent to handle her financial affairs and did so. Thus, there was absolutely no evidence adduced as to whether there was a relationship of dominance and dependence. Nor was there any evidence that the plaintiff was unable to fully protect or own interests so as to establish a fiduciary relationship between the parties. See DeMorais v. Wisniowski, 81 Conn. App. at 606-07 (2004). Although the plaintiff had executed a power of attorney in favor of the defendant during the years from 1991 to 2001, there was no evidence that the defendant ever utilized that power of attorney. A power of attorney that was never utilized cannot support a finding of a fiduciary relationship.

12

In addition to there being no evidence of a fiduciary relationship, there was also no evidence that the plaintiff herself ever had suspicions, claims or complaints of any wrongdoing by the defendant relative to her financial affairs. This is critically probative of the defendant's lack of culpability in light of the fact that the evidence established that at all times up until February 2001 when the plaintiff suffered her first stroke, the plaintiff directly received and had access to bank statements and all other records of her financial affairs. Thus, despite knowledge of the defendant's conduct, the plaintiff then had no complaint about that which she, years later and only through her appointed representative, now complains.

Notwithstanding the lack of any complaint by the plaintiff herself, Mr. Lefevre claims that the defendant is liable to the plaintiff as alleged in the complaint based upon certain transactions about which Mr. Lefevre testified. A brief review of Mr. Lefevre's testimony demonstrates that there was no evidence on which a finding of probable cause against the defendant could be based.

Mr. Lefevre identified seven cashier's checks that purportedly drew funds from the plaintiff's bank account and were deposited into the defendant's bank account. Two of these checks were each in the amount of $250,000, and were drawn in 1996 and 1997. The remaining five checks were each in the amount of $20,000, and were all drawn on the same date in April 2000. Other than the fact that these transactions occurred, there was no other evidence adduced as to the circumstances of the

13

transactions or whether there was anything wrongful or even untoward concerning these transactions. To the contrary, the evidence was that the plaintiff received her bank statements which reflected the withdrawals from her account and never made any complaint about these transactions.

Mr. Lefevre also testified about a $90,000.00 withdrawal from the plaintiff's bank account in or about April of 2000. There was no evidence that it was the defendant who made the withdrawal or that the defendant benefited in any way as a result of the withdrawal. Further, this transaction occurred before the plaintiff had suffered either stroke and at a time when the plaintiff was competent and reviewing her own records relative to her financial transactions. Yet, there was no evidence of any complaint or concern on the part of the plaintiff relative to this withdrawal at the time that it occurred.

Mr. Lefevre also claimed in his testimony that the defendant was somehow liable to the plaintiff as a result of the sale of shares of Herley Industries stock in 1994 and 1995 for $454,443. This claim was based on no factual evidence. The plaintiff presented no evidence as to who owned the stock at the time of the sale. No stock certificates were introduced. No records of the sale of the stock were introduced. There was certainly no evidence of any wrongdoing by the defendant in connection with the Herley stock. Nor was there any evidence that either of the defendant's parents had ever questioned any conduct by the defendant relative to the Herley

14

stock, or made any claim that he had somehow misappropriated the stock from either of them. Indeed, upon cross-examination, Mr. Lefevre acknowledged that it was possible that the defendant's father, prior to his death, had transferred the Herley stock to the defendant in 1990.

Mr. Lefevre also claimed that the defendant had misappropriated proceeds from the sale of Varian stock. Mr. Lefevre testified that the defendant had said that he had purchased the Varian stock from the plaintiff in 2000 in a cash transaction. Mr. Lefevre concluded that the failure of the plaintiff to report the capital gain from the sale of the stock on her tax return for 2000 proved that the defendant had not paid for the stock and he saw no substantial deposit in her bank accounts at that time. Mr. Lefevre's speculations do not constitute probable cause. If the Varian stock was rightfully owned by the plaintiff, Mr. Lefevre had the ability to procure the records that would reflect the terms of the sale of the Varian stock. Mr. Lefevre did not do so. Again, no stock certificates were produced nor were any records of the sale of the stock produced.

Mr. Lefevre also testified that, upon his examination of the plaintiff's records, the plaintiff had lost $742,000 for which he could not account. No records were produced in support of this testimony. Mr. Lefevre admitted that he had no evidence that the defendant benefited in any fashion from the transactions and that he needed to do further research and review to determine whether claims could be asserted

against the defendant for these sums. Further, Mr. Lefevre also acknowledged that his comprehensive review of the Sullivan financial records dating back some 15 years revealed that the Sullivans did not memorialize their intra-family transactions with any kind of formality.

Mr. Lefevre also testified about three more minor transactions. The first of these minor transactions involved a check made payable to the plaintiff and drawn on Corner Realty, Inc., on August 8, 2001, which check was deposited into the defendant's account. Mr. Lefevre produced no evidence of any wrongdoing by the defendant relative to this claim. To the extent that Mr. Lefevre's testimony was intended to show that the plaintiff's mental capacity was diminished on that date as a result of her stroke, Mr. Lefevre himself countered that argument when he testified that the plaintiff was competent 22 days after the issuance of the check when she terminated the power of attorney of the defendant. Further, there was no evidence of any wrongdoing relative to the circumstances in which the check was deposited into the defendant's account.

The other two minor transactions involved a $9,000 check drawn on the plaintiff's account and made payable to the defendant, and a November 11, 1998 check drawn on the defendant's father's account and made payable to the defendant. There was no evidence, however, as to the creation of these instruments or that the

defendant did anything inappropriate involving these instruments. Absent any proof, Mr. Lefevre has merely speculated as to the defendant's involvement and liability.

In sum, the plaintiff's case is nothing but smoke and mirrors. The plaintiff has introduced no evidence whatsoever of any wrongdoing by the defendant. The lack of any evidence of wrongdoing, coupled with the lack of any complaints by the plaintiff relative to any conduct by the defendant, easily overcomes the plaintiff's speculations and leads to the inescapable conclusion that the defendant has in fact not engaged in any wrongdoing. The plaintiff has failed to establish probable cause to the contrary.

Accordingly, it is respectfully submitted that, absent probable cause, the order granting the prejudgment remedy was clearly erroneous and should be vacated.


**IV.    Recommended Ruling on Injunctive Relief Was Error.**

It is respectfully submitted that the Court further erred in finding, absent any pending application, that the plaintiff is entitled to injunctive relief.

At page 11 of its decision, the Court rules,

> The magistrate judge finds further that the plaintiff has
> shown that she is likely to succeed on the merits of her
> claims against the defendant and that irreparable harm is
> likely to befall the plaintiff unless the defendant is
> prohibited and enjoined from transferring his property.
> Accordingly, the entry of an injunction by the district judge
> would appear to be appropriate upon application by the

17

plaintiff, and submission to the court of a narrowly drawn
proposed order in otherwise proper form.

The Court's recommended ruling is in error. There was no application for injunctive

relief that was pending at the time of the hearing. The application for injunctive relief

filed by the plaintiff had previously been denied by the Court. Because there was no

application for injunctive relief pending, the defendant was provided no notice nor

opportunity to defend against any such application or the legal grounds that would

need to be proved in order for such injunctive relief to be granted. To decide that

grounds exist for such relief to be granted when no application for such relief was

pending, and further to invite an application for such relief and indicate how it will be

decided upon its being filed, deprived the defendant of his due process right to be

heard on these issues.

**CONCLUSION**

Based on the foregoing, the defendant respectfully objects to the Magistrate

Judge's Ruling on Plaintiff's Motion for Prejudgment Remedy, and requests that said

ruling be vacated.

THE DEFENDANT
DAVID J. SULLIVAN,

BY *Denise M. Cloutier*

Denise M. Cloutier
Fed. Bar No. ct09843
For Cramer & Anderson, LLP
P.O. Box 278
46 West Street
Litchfield, CT 06759
Tel No. (860) 567-8718
Fax No. (860) 567-4531
dcloutier@cramer-anderson.com

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed via first class mail,

postage pre-paid to all counsel and pro se parties of record on April 13, 2004.

Owen P. Eagan, Esq.
Eagan & Donohue
24 Arapahoe Road
West Hartford, CT 06107

*Denise M. Cloutier*

Denise M. Cloutier
Fed. Bar No. ct 09843