**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JEANNE M. SULLIVAN, | : | CIVIL ACTION NO.: |
|     PLAINTIFF | : |   NO.: 302CV916(CFD) |
| | : | |
| VS. | : | |
| | : | |
| DAVID J. SULLIVAN, | : | |
|     DEFENDANT | : | MAY 5, 2004 |

**PLAINTIFF'S REPLY TO DEFENDANT'S OBJECTION**
**TO MAGISTRATE JUDGE'S RULING ON PLAINTIFF'S MOTION**
**FOR PREJUDGMENT REMEDY**

      The Plaintiff, Jeanne M. Sullivan, hereby submits her reply to Defendant's Objection to Magistrate Judge Smith's ruling on Plaintiff's Motion for Prejudgment Remedy.

**I.**      **The Objection is Untimely**

      Pursuant to 28 U.S.C. §636 and Rule 72 of the Federal Rules of Civil Procedure, "any party wishing to object must, within ten (10) days after service of such order or recommended ruling [on him], serve on all parties, with the Clerk, written objection which shall specifically identify the ruling, order, proposed findings and conclusions, or part thereof which objection is made and the factual and legal basis for such objection." Rule 72 further states, "service of the order of the Magistrate Judge or recommended ruling shall be deemed to occur no later than five (5) days after the filing of such order or ruling with the Clerk."

In this case, Magistrate Judge Smith's ruling was filed on March 29, 2004. The Plaintiff received the Judge's ruling the next day, Tuesday, March 30, 2004. (See Affidavit of Marco D'Occhio attached hereto.) While Defendant's counsel probably received the ruling on or about the same day, the Defendant fails to state that in his motion.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, service of the Order is deemed to have been received no later than 5 days after its filing. Five days after filing would have been April 3, 2003, therefore, the Defendant was required to serve his objection on all parties and the Clerk no later than April 13, 2003.

The Defendant's objection was mailed on April 13, 2003 and not served until after that date. The Plaintiff received the Defendant's motion on April 15, 2004. (See Affidavit of Marco D'Occhio attached hereto.) Therefore since the objection was not served until after the time allotted by the Federal Rules of Civil Procedure, the objection is untimely.

**II.     The Magistrate's Ruling Found Probable Damages in a Fixed Amount Totaling 2.2 Million Dollars**

In an application for a prejudgment remedy, the amount of damages need not be determined with mathematical precision. Burkert v. Petrol Plus of Naugatuck, Inc., 5 Conn. App. 296, 301 (1985). A "fair and reasonable estimate" of the likely potential damages is sufficient to support the entry of a prejudgment attachment. Id. Section 52-278(d) explicitly provides that an application for prejudgment remedy may be granted as requested or as modified by the court. Rafferty v. Noto Bros. Const., LLC, 68 Conn. App. 685, 688 (2002).

Here, the Plaintiff's application sought an attachment of $1,500,000.00 dollars. ( Pl.'s Mot. Inj. & PJR. of 1/8/03)  During the full-day hearing, Matthew Lefevre, the Conservator of the Estate of Jeanne M. Sullivan, testified among other things that: (1) For ten (10) years, David Sullivan was Jeanne M. Sullivan's attorney in fact via Power of Attorney dated September 17, 1991, (2) that David Sullivan told Matthew Lefevre that he had handled his mother's financial affairs for the past ten (10) years; (3) that David Sullivan told Matthew Lefevre that his mother, never gave him gifts; (4) that while Davis Sullivan was handling his mother's affairs, that over 1,200,000.00 dollars in assets was transferred from Jeanne M. Sullivan's name to accounts held by David Sullivan; (5) that while David Sullivan was handling his mother's affairs, over $700,000.00 dollars of Jeanne M. Sullivan's money was missing or unaccounted for;  (6) that although David Sullivan pledged his support to cooperate with Matthew Lefevre in locating missing assets, David Sullivan through his attorney, William Franklin, refused in writing to cooperate and provided little or no information concerning his mother's assets which were in his possession; (7) that David Sullivan tried to prevent his sister, Suzanne Xanthos, who held her mother's Power of Attorney as of August 30, 2001, from obtaining information on the unaccounted money; (8) that while David Sullivan was handling his mother's financial affairs, David Sullivan admitted to both Matthew Lefevre and stated in his response to a Request to Admit that he signed his mother's name on various checks, some of which he made out to himself and some of which he made out to pay his credit card bills; (9) that while David Sullivan was handling his mother's financial affairs, he claimed he purchased shares of his mother's stock valued at $30,000 to $60,000 for cash without any record of the sale; (10) that while David

Sullivan was handling his mother's financial affairs, he closed his mother's safety deposit box and transferred her cash and other valuable assets into a safety deposit box in his name alone; (11) that while David Sullivan was handling his mother's financial affairs, he put his name on his mother's bank accounts that were previously held by his mother alone; (12) that David Sullivan had possession of his mother's stock and dividend checks which he had directed to be delivered to him at his home in Bermuda despite the fact his mother had not been to Bermuda in over ten (10) years; (13) that for over ten (10) years, David Sullivan conducted his mother's legal affairs with her attorney, Lincoln Cornell; and (14) that David Sullivan conducted all his mother's tax affairs with her accountant, Catherine Beers, who also has tried for years to get David Sullivan to account for his mother's missing assets.

At the hearing, Matthew Lefevre also testified that approximately $200,000.00 in attorney fees would be generated in bringing the Plaintiff's lawsuit to a conclusion. Plaintiff's counsel agreed that it was entitled to reimbursement of said amount pursuant to its fraud claim against the Defendant. Matthew Lefevre also summarized the Plaintiff's claim for an attachment in the amount of $2,200,000.00 at the end of his direct exam.

At the hearing, the Defendant only cross examined Matthew Lefevre. He offered no testimony of his own.

Following the hearing, each party submitted post hearing briefs in support of their respective positions. The Plaintiff again outlined her claim for the $2,200,000.00 attachment. In

his post hearing brief, the Defendant acknowledged that the $2,200,000.00 was the amount sought by the Plaintiff. (Def's. Mem. Opp'n of Pl's. Mot. PJR of 3/4/04 at 31)

The Defendant argues that Magistrate Judge Smith's failure to state the amount of the attachment in his Order granting the Plaintiff's Motion for Prejudgment Remedy is fatal. The Defendant is wrong. The Defendant's reliance on Rafferty v. Noto Bros. Const., LLC, 68 Conn. App. 685, 694 (202) and Union Trust Co. v. Heggelund, 219 Conn. 620, 625 (1991) is misplaced. In Rafferty, the Appellate Court held that the lower court failed to specify the sum to be secured because it ordered an attachment of rental income that had no fixed monetary value assigned to it and potentially was unlimited as to the time during which attached assets could continue to accumulate. On that basis, the Appellate Court ruled that it was beyond the scope authorized by §52-278(d) and therefore improper. In Union Trust Co., the Supreme Court determined that the priority of an attachment depended on the amount stated in the attachment itself and that the trial court should have therefore limited the bank's priority rights in the foreclosure sale proceeds to the amount of the attachment. Id. at 625-629. The court reasoned that an attachment should not be a "growing quantity, increasing with the accumulation of costs and enlarging as more damages are demanded."

The issues in both the Rafferty and Union Trust Co. cases do not exist in this case because both parties and the Court understood that the amount being requested was $2,200,000.00. Magistrate Judge Smith's failure to set forth the 2,200,000.00-dollar attachment in his ruling did

not equate to a failure to find probable damages. There was no mistake as to what the Plaintiff asked for by way of a Prejudgment Attachment. Furthermore, nothing prevents the Court from now enumerating the specific amount of the attachment ordered by Magistrate Judge Smith.

**III.     Connecticut General Statute §52-577 is Tolled if a Continuing Duty on the Part of an Alleged Tortfeasor Exists.**

Connecticut General Statutes §52-577 is tolled if a continuing duty on the part of the alleged tortfeasor exists. Fichera v. Mine Hill Corp., 207 Conn. 204, 209 (1988).

"To support a finding of continuing course of conduct that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such wrong... Where [courts] have upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of the defendant related to the prior act." Id. at 209.

Here, the Plaintiff's has alleged and proven that the Defendant, David Sullivan, had a special relationship with the Plaintiff, Jeanne M. Sullivan. First, he was her son. Second, he was entrusted to handle her financial affairs for over ten (10) years. Finally, he held a Durable Power of Attorney executed by the Plaintiff in his favor, granting him the formal ability to act on her behalf in all her transactions and affairs, also for ten (10) years.

At the hearing, the Court heard and saw ample evidence showing that the Defendant

breached the duty he owed to his mother on a continuing basis.

At the hearing, the Plaintiff also demonstrated that the Defendant, David Sullivan's breach remained in existence after the commission of the original wrong because the Defendant concealed his wrongdoing by writing financial institutions and telling them not to provide information requested by Suzanne Xanthos.

David Sullivan also refused to provide financial information requested by Matthew Lefevre. He continues to refuse to let the Plaintiff have any information concerning his mother's financial matters including but not limited to information concerning the Bermuda bank accounts into which he deposited over $600,000.00 of his mother's money.

## VI.     The Plaintiff Established Probable Cause

The probable cause necessary to sustain a PJR has been defined as "the good faith belief in the existence of facts essential for the action which would convince the hypothetical reasonable person of the merits of the action. Ledgebrook Condominimum Assn., Inc. v. Lusk Corp., 172 Conn. 577, 584 (1977). "The uncontradicted statement of an affiant that he believes that recovery of a stated sum is probable, together with a finding of facts which reasonably support the affiant's belief, will ordinarily justify a holding of probable cause." Cordoba Shipping Co., LTD v. Maro Shipping LTD, 494 F. Supp. 183, 187 (1980). At the hearing, Matthew Lefevre made such a statement. The statement was uncontradicted.

At hearing, Matthew Lefevre testified that the following was taken by David J. Sullivan:

$608,414.75.......................................Deposited into David J. Sullivan's account at the N.T. Bank of Butterfield & Son, Ltd. in Bermuda ($600,000.00 cashier's checks (Exhibit "6") and $8,414.75 Corner Realty 30/7 Inc.'s check (Exhibit "8")

$90,000.00.........................................Check from Corner Realty 30/7, Inc. deposited and were withdrawn from Jeanne M. Sullivan's account at the Bank of N.T. Butterfield & Son, Ltd. in Bermuda (Exhibit "7")

$454,000.00.......................................Herley Stock

$30,000.00 - $60,000.00 ....................Varian Stock

$742,000.00.......................................Unaccounted for Assets

$9,000.00...........................................Check made out to David Sullivan himself (Exhibit "13")

<u>$1,400.00                                </u>............Core States check to close Account of Jeanne M. Sullivan's husband in 1998 (Exhibit "23").

**$1,934,814.75 - $1,964,814.75        Total**

Matthew Lefevre testified that he believed that recovery of $2,200,000.00 was probable after trial because he would collect $1,964,814.75 plus the attorney's fees of over $200,000.00 on the fraud claim. This evidence was enough to establish probable cause necessary to Order the Prejudgment Remedy. Magistrate Judge Smith's Order should be upheld and the Defendant's objection should be overruled.

**CONCULSION**

       Based on the foregoing, the Magistrate Judge's Ruling on the Plaintiff's Motion for Prejudgment Remedy should be upheld.

                                  PLAINTIFF,
                                  JEANNE M. SULLIVAN

                        By:_____
                            Marco D'Occhio
                            EAGAN & DONOHUE
                            24 Arapahoe Road
                            West Hartford, CT  06107
                            Federal Bar No. ct24364
                            (860)232-7200 - telephone
                            (860)232-0214 – facsimile
                            Lawfirm5@mindspring.com

## **CERTIFICATION OF SERVICE**

    This certifies that a copy of the foregoing Plaintiff's Reply to Defendant's Objection to Magistrate Judge Smith's Ruling on Plaintiff's Motion for Prejudgment Remedy was mailed, postage prepaid, to all parties of record this ___5th___ day of May, 2004.

William C. Franklin, Esq.
Cramer & Anderson
P.O. Box 278
46 West Street
Litchfield, CT 06759

                                                               Marco D'Occhio

*X01-P49ReplyToObjection/st*

# AFFIDAVIT OF MARCO D'OCCHIO

I, **MARCO D'OCCHIO**, the undersigned, being duly sworn, hereby depose and say:

1. That I am over the age of eighteen and understand the obligations of an oath;

2. That I am an attorney employed at the Law Firm of Eagan & Donohue in West Hartford, Connecticut;

3. That I have been attorney for two (2) years;

4. That on March 30, 2004 I received Magistrate Smith's Ruling on Plaintiff's Motion for Prejudgment Remedy filed on March 29, 2004 with the United States District Court in Hartford, Connecticut;

5. That on April 15, 2004, I received the Defendant's objection to Magistrate Judge Smith's ruling on Plaintiff's Motion for Prejudgment Remedy; and

6. That I make this affidavit as my free act and deed.

I hereby certify that the foregoing Affidavit is true and accurate to the best of my knowledge and belief.

                                              **MARCO D'OCCHIO**

Subscribed and sworn to this ____th day of May, 2004.

                                              Notary Public/Commissioner of the Superior Court